# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3763

_____

United States of America,　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　*
　　　　　　　　　　　　　　　　*　　Appeal from the United States
　　v.　　　　　　　　　　　　　*　　District Court for the
　　　　　　　　　　　　　　　　*　　Southern District of Iowa.
Kerwin Lamont Summage,　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　*


_____

Submitted: June 12, 2009
Filed: July 31, 2009

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Following a jury trial, Kerwin Lamont Summage was convicted of two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). The district court[1] sentenced Summage to 720 months' imprisonment. Summage appeals his conviction. For the following reasons, we affirm.

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

## I.  BACKGROUND

In July 2004, J.W., Summage's mentally handicapped cousin, went to the police in Davenport, Iowa, along with his sister and mother to report a crime.  They told Detective Brandon Noonan that Summage, whom J.W. feared, took J.W. to Summage's apartment and offered J.W. money if he would have sex with a woman who was waiting naked in Summage's bedroom.  The woman undressed J.W., had him lay on the bed, and then performed oral sex on him while Summage filmed and took photographs of the encounter.

In response to J.W.'s report, Julie Walton, who worked part-time as an assistant county attorney and who also worked at a private law firm that had previously represented Summage in a child custody matter, presented an application for a search warrant to search Summage's residence to an Iowa state magistrate judge.  The judge issued the search warrant based on an affidavit executed by Detective Noonan.  The warrant authorized police to seize the following items:  videotapes and DVDs, pornographic pictures, video or digital recording devices and equipment, equipment used to develop or upload or download photographs or movies, and computers.

Police executed the search warrant the next day, finding and seizing camera equipment, computer equipment, films and other evidence.  On Summage's computer, police found images of children engaged in sexually explicit conduct.  Police also discovered homemade 8-millimeter films with sexually explicit content.  Summage appeared to be directing or recording portions of some of the films.  On most of the films, Summage's voice is heard, and on some of the films he appears in a mirror while holding or operating the camera.  One of the films depicts Melissa Brown, Summage's girlfriend and the mother of two of his children, performing oral sex on her infant son, X.B.  Another film contains a clip of Summage standing over a three-year-old girl, later identified as Brown's daughter, J.T., masturbating while his penis is next to her exposed vagina.

On October 14, 2005, a federal grand jury returned an indictment charging Summage with producing and possessing child pornography. Summage moved to suppress the evidence found during the search of his residence, arguing that the affidavit filed with the search warrant application failed to establish probable cause and that the warrant lacked particularity. The district court granted the motion, but we reversed, concluding that the affidavit was sufficient to establish probable cause because

> [a]lthough the affidavit did not specifically name the crime that had been committed, the alleged facts support a finding of probable cause to believe that Summage's actions constituted criminal conduct—specifically the solicitation of prostitution or pandering—given the fact that Summage had offered money in exchange for [J.W.'s] services in a sex act.

*United States v. Summage* (*Summage I*), 481 F.3d 1075, 1079 (8th Cir. 2007) (footnotes omitted), *cert. denied*, 552 U.S. ---, 128 S. Ct. 875 (2008). We also determined that the warrant was not overbroad or lacking in particularity because "no indication was given regarding the nature of the format in which the sought-for video and photographs were created or stored, [so] it was necessary to search a broad array of items for the relevant materials." *Id.* at 1079-80.

Following our decision and the issuance of our mandate on June 19, 2007, Summage filed a petition for a writ of certiorari on September 6, 2007. The district court scheduled Summage's trial to start on October 29, 2007, but, for unexplained reasons, the trial was not held then. The Supreme Court denied Summage's petition for a writ of certiorari on January 7, 2008. *Summage v. United States*, 128 S. Ct. 875 (2008). On February 26, 2008, Summage filed a motion to dismiss the indictment based on the Speedy Trial Act and the Sixth Amendment. On March 26, 2008, the district court received notice of the denial of Summage's petition for a writ of

certiorari. After a hearing, the district court granted Summage's motion based on the Speedy Trial Act and dismissed the indictment without prejudice.

The Government presented the matter to another grand jury, which returned a substantially similar indictment on May 13, 2008. On June 11, 2008, Summage filed a motion to suppress and requested a *Franks*[2] hearing. The district court denied the motion. On June 18, 2008, Summage filed a motion for a continuance of the trial setting, claiming that he and his counsel were "not yet fully prepared for trial." The district court denied Summage's motion. On June 20, 2008, Summage filed a motion to proceed pro se at trial. Before the trial began on June 23, 2008, the district court thoroughly warned Summage of the dangers and risks of proceeding pro se. After hearing the warning, Summage confirmed that he knowingly and voluntarily gave up his constitutional right to representation. However, Summage requested that standby counsel be present at the table with him to assist with technical aspects of the trial, such as objections, jury selection, his opening statement and the examination of witnesses. The district court denied Summage's request for "hybrid" representation because "[e]ither [Summage] has a lawyer or he doesn't have a lawyer." When Summage stated that he might not be "familiar with" the "little minute . . . procedural matters," the district court warned him that those matters "might seem minute, but . . . those little minute things could turn out to be major things, and if you don't know them like a lawyer, you can suffer greatly because of that." Even after acknowledging that warning and the district court's statement that it would not permit hybrid representation, Summage continued to express his desire to represent himself.

Following the trial, the jury found Summage guilty on all counts. Summage appeals his conviction, arguing that the district court erred in denying his motion to suppress, in failing to dismiss the initial indictment with prejudice under the Speedy Trial Act and the Sixth Amendment, in denying his request for hybrid representation, in denying his motion for a continuance, and in multiple evidentiary rulings.

---

[2]*Franks v. Delaware*, 438 U.S. 154 (1978).

## II. DISCUSSION

### A. Motion to Suppress

In reviewing a denial of a motion to suppress, we review the district court's factual determinations for clear error and its legal conclusions de novo. *United States v. Clarke*, 564 F.3d 949, 958 (8th Cir. 2009).

Initially, Summage renews the following arguments from his previous appeal concerning the search warrant:  that the application and affidavit were insufficient to support a finding of probable cause; that the application and affidavit were unclear about what type of criminal activity was alleged to have occurred; that the application was vague; that there was an insufficient nexus between the place to be searched and the evidence sought; and that the search warrant was overbroad and lacked particularity under the Fourth Amendment.  Because we resolved all of those issues in Summage's previous appeal, *see Summage I*, 481 F.3d at 1077-80, we will not review any of them now, *see United States v. Stuart*, 689 F.2d 759, 762 (8th Cir. 1982) ("This is a classic case of a litigant impermissibly attempting to relitigate the same claim . . . in violation of well established principles of res judicata . . . .").

In addition to those arguments, Summage raises three new arguments regarding the search warrant:  (1) that the search warrant was overbroad and lacked particularity because it sought materials protected under the First Amendment; (2) that his due process rights were violated because the assistant county attorney who presented the search warrant application was employed by a law firm Summage had previously retained; and (3) that Summage should have been allowed to present evidence at a *Franks* hearing.

#### 1. Breadth and Particularity

Summage first argues that the search warrant was overbroad and lacked particularity because it allowed police to seize materials protected by the First

Amendment; namely, non-obscene pornography. We have previously explained that "where [a search] warrant authorizes seizure of materials protected by the [F]irst [A]mendment, the requirements of the Fourth Amendment must be applied with scrupulous exactitude." *United States v. Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988) (internal quotation omitted). Here, those Fourth Amendment requirements were applied with scrupulous exactitude. In *Summage I*, we considered Summage's Fourth Amendment arguments and explicitly found that the search warrant was not overbroad or lacking in particularity. *Summage I*, 481 F.3d at 1080. As we explained, because there was no indication of the "nature of the format in which the sought-for video and photographs were created or stored, it was necessary to search a broad array of items for the relevant materials." *Id.* at 1079-80. "The requirement of particularity must be assessed in terms of practicality." *Id.* at 1079. As a practical matter, it was reasonable to allow police to seize the items potentially containing the relevant materials even though some of the seized material might be protected by the First Amendment, particularly since "it is frequently difficult, and often times more intrusive to an individual's privacy, to perform an on-site review of certain items." *Id.*; *see also United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999) ("As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images."). Thus, the search warrant did not violate the First Amendment by allowing police to seize materials protected by the First Amendment because there was probable cause to believe that those materials also contained evidence of a crime.

## 2. Due Process

Summage also claims that his due process rights were violated because Julie Walton, the part-time assistant county attorney who presented the application for the search warrant to the Iowa state magistrate judge, also worked at a private law firm that had previously represented Summage in a child custody dispute. Summage argues that this created a conflict of interest that represented a "serious breach of the duty of loyalty that an attorney owes his client," *Williams v. Lockhart*, 849 F.2d 1134, 1138 (8th Cir. 1988), and thus violated his Fifth Amendment right to due process. We

review de novo Summage's constitutional argument that his due process rights were violated. *See United States v. Finck*, 407 F.3d 908, 916 (8th Cir. 2005).

To demonstrate a violation of due process, a defendant must establish that he was actually and substantially prejudiced. *United States v. Gladney*, 474 F.3d 1027, 1030 (8th Cir. 2007). Summage has failed to establish, or even allege, that he was prejudiced by Walton's actions. He does not claim that Walton improperly used any information gleaned from her firm's prior representation of him. Furthermore, although Walton presented the application for the search warrant, an independent magistrate judge issued the search warrant. Summage does not suggest that the magistrate judge was biased or acted inappropriately in issuing the search warrant. Summage also has not shown that, had the application been presented by a different assistant county attorney, the magistrate judge would not have issued the search warrant. *Cf. Hunt v. Houston*, 563 F.3d 695, 704 (8th Cir. 2009) (stating, in a habeas challenge under 28 U.S.C. § 2254, "[t]o demonstrate prejudice, [a party] must show a reasonable probability that, but for the alleged constitutional violations, the result of the proceeding would have been different"); *United States v. Tyndall*, 521 F.3d 877, 881 (8th Cir. 2008) (noting, in rejecting a claim that the defendant's due process rights were violated when the prosecutor failed to comply with *Brady*, "no prejudice can be shown unless there is a reasonable probability that the verdict would have been different"), *cert. denied*, 555 U.S. ---, 129 S. Ct. 997 (2009). Accordingly, we conclude that Summage's due process rights were not violated.

### 3. *Franks* Hearing

Summage next argues that he was entitled to a hearing under *Franks v. Delaware* because although Detective Noonan disclosed in the search warrant affidavit that J.W. was "mentally handicapped," he failed to provide other information by which the magistrate judge could assess J.W.'s credibility, such as whether J.W. was a ward of a conservator or a guardian, whether he was in an assisted-living facility or lived alone, or what educational level he had attained. To obtain a *Franks* hearing, the defendant must make a substantial preliminary showing that the affiant's

statement or omission was deliberately false or demonstrated reckless disregard for the truth and that the statement or omission was essential to the magistrate judge's finding of probable cause. *Franks*, 438 U.S. at 155-56. This requirement is "not easily met." *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002). When a defendant claims he is entitled to a *Franks* hearing based on information that was omitted from the affidavit, he must "prove by a preponderance of the evidence that the applying officer omitted facts in reckless disregard of whether the omission made the affidavit misleading and that, if supplemented by the 'clearly critical' information omitted, the affidavit would not have supported a finding of probable cause." *United States v. Montes-Medina*, Nos. 08-2940, 08-2970, --- F.3d ---, slip op. at 9 (8th Cir. July 7, 2009) (quoting *United States v. Williams*, 477 F.3d 554, 559 (8th Cir. 2007)). We review the district court's decision to deny a *Franks* hearing for abuse of discretion. *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir.), *cert. denied*, 554 U.S. ---, 128 S. Ct. 2947 (2008).

In claiming that he was entitled to a *Franks* hearing, Summage fails to argue that Detective Noonan omitted the information "in reckless disregard of whether the omission made the affidavit misleading," or that the affidavit would not have supported a finding of probable cause if it had included the information. *See Montes-Medina*, slip op. at 9. Moreover, we are satisfied that the omitted information is not "clearly critical" such that had it been included, the affidavit would not have supported a finding of probable cause. Detective Noonan included the fact that J.W. was mentally handicapped in his affidavit. The omitted information would add very little to the court's ability to assess J.W.'s credibility. Thus, Summage has not made the substantial preliminary showing necessary for a *Franks* hearing. Therefore, we conclude that the district court did not abuse its discretion in denying Summage a *Franks* hearing.

## B. Speedy Trial

Because Summage's trial had not begun by February 2008, Summage filed a motion to dismiss the indictment, alleging violations of the Speedy Trial Act and the

Sixth Amendment. The district court granted the Speedy Trial Act claim but denied the Sixth Amendment claim and dismissed the indictment without prejudice. The Government then refiled the charges and tried him promptly. Summage appeals, arguing that the district court should have dismissed the original indictment with prejudice and also should have granted his motion under the Sixth Amendment.

### 1. Speedy Trial Act

The parties do not dispute that the district court appropriately dismissed the indictment under the Speedy Trial Act. The issue here is whether the indictment should have been dismissed with prejudice. We review a district court's decision to dismiss an indictment with or without prejudice based on a Speedy Trial Act violation for abuse of discretion. *United States v. Becerra*, 435 F.3d 931, 935 (8th Cir. 2006).

The Speedy Trial Act provides that

> [i]f a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant. . . . In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2). We are also to consider the prejudice to the defendant resulting from the Speedy Trial Act violation. *United States v. Taylor*, 487 U.S. 326, 334 (1988).

Turning to the Speedy Trial Act factors, first, Summage concedes that the charges are very serious. "When the crime is serious, the court should dismiss with prejudice only for a correspondingly serious or prejudicial delay." *United States v. Cardona-Rivera*, 64 F.3d 361, 363-64 (8th Cir. 1995). According to the district court,

187 non-excludable days passed before Summage filed his motion to dismiss, or 117 days beyond the 70-day limit. We acknowledge that this is a lengthy delay. However, serious delay alone does not require a dismissal with prejudice. As discussed more thoroughly below, Summage has failed to establish that the delay prejudiced him. Second, the facts and circumstances leading to the dismissal favor a dismissal without prejudice. Much of the delay consisted of the time between the issuance of our mandate in *Summage I* and the Supreme Court's denial of Summage's petition for a writ of certiorari, during which time neither party filed a motion to stay our mandate. Summage does not claim that the Government caused the delay. Rather, he states that "responsibility for the greatest delay, about 120 days, falls squarely on the court system itself." "When the delay is not attributable to the government, but to the [c]ourt, dismissal with prejudice is not favored." *Id.* at 364; *see also United States v. Koory*, 20 F.3d 844, 848 (8th Cir. 1994) ("The circumstances do not favor dismissal with prejudice . . . where there is no showing that the claimed negligence was in reality an attempt to obtain a tactical advantage for the government or that the government regularly or frequently failed to meet the time limits of the Act."). As the district court noted in its order,

> [u]nfamiliar with U.S. Supreme Court procedures, court personnel acted as though a petition for certiorari was equivalent to an appeal to the court of appeals and waited for a mandate to be filed with this court. Regardless of this mistake, no one . . . informed this court of the U.S. Supreme Court's denial of the petition for certiorari until March 26, 2008.

Third, the impact of reprosecution will not undermine the administration of justice, particularly since Summage does not suggest that the Government acted in bad faith. *See United States v. Richardson*, 537 F.3d 951, 958 (8th Cir. 2008), *cert. denied*, 556 U.S. ---, 129 S. Ct. 2378 (2009). On the contrary, if the Government was not allowed to reprosecute Summage for such a serious crime, society's confidence in the justice system would be undermined. *See United States v. Kramer*, 827 F.2d 1174, 1179 (8th Cir. 1987).

Finally, Summage has not established that he was prejudiced by the violation of the Speedy Trial Act. He claims only that there are "witnesses whose memory of specific events *may* have been compromised due to the passage of time or due to other factors." (Emphasis added.) One such witness who Summage claims might have given him an alibi was already dead by October 2007, within the 70-day time limit, so the violation of the Speedy Trial Act did not prejudice him in regard to that witness. Summage also failed to establish prejudice regarding any other possible witnesses as a result of the delay. He points to his cousin whose whereabouts are currently unknown, his half-brother who has moved away, former Department of Human Services social workers and police officers, another cousin whose memory "is likely to have faded," and other individuals who knew Melissa Brown. But Summage does not elaborate on when any of these witnesses became unavailable, the substance of their testimony, or how their testimony would have changed the outcome of the trial. We are not convinced by Summage's vague references to potential "impeachment evidence against Ms. Brown at trial, or . . . corroborative evidence to substantiate the defense theory." Summage also claims prejudice based on strains to family ties and relationships, negative publicity regarding the criminal charges, and a delay in receiving non-emergency medical care, but these all may occur in criminal prosecutions generally, without regard to a speedy trial violation. *See Richardson*, 537 F.3d at 958 (affirming the district court's finding that Richardson was not prejudiced by strain on family ties and relationships because "strain occurs as a result of criminal prosecutions generally, regardless of any speedy-trial violation"). After considering the various factors, we find that the district court did not abuse its discretion under the Speedy Trial Act in deciding to dismiss the indictment without prejudice.

### 2. Sixth Amendment

"We review the district court's findings of fact on whether a defendant's right to a speedy trial was violated [under the Sixth Amendment] for clear error but review its legal conclusions de novo." *United States v. Aldaco*, 477 F.3d 1008, 1016 (8th Cir. 2007).

Initially, we must determine whether the delay between indictment and Summage's motion to dismiss was presumptively prejudicial. *See Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (explaining that to trigger a Sixth Amendment speedy trial analysis, the defendant "must [first] allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay"). If so, we proceed to analyze the four factors governing the Sixth Amendment's speedy trial protections under *Barker v. Wingo*, 407 U.S. 514 (1972). Here, we assume the delay of more than two years between indictment and Summage's motion to dismiss was presumptively prejudicial. *See United States v. Jeanetta*, 533 F.3d 651, 656 (8th Cir.) ("A delay approaching one year may meet the threshold for presumptively prejudicial delay requiring application of the *Barker* factors."), *cert. denied*, 556 U.S. ---, 129 S. Ct. 747 (2008). Thus, in determining whether Summage's Sixth Amendment rights were violated, we consider: "1) the length of delay; 2) the reason for delay; 3) whether the defendant asserted the right to a speedy trial; and 4) whether the defendant suffered any prejudice." *Id.* (citing *Barker*, 407 U.S. at 530).

First, two years is indeed a lengthy delay. Second, "we consider the reasons for the delay and evaluate 'whether the government or the criminal defendant is more to blame.'" *Id.* at 777 (quoting *Doggett*, 505 U.S. at 651). Here, the parties each bear some responsibility for the delay. The trial was continued several times at Summage's request so that he could obtain new counsel. The bulk of the delay occurred when the Government appealed the district court's grant of Summage's motion to suppress and Summage subsequently petitioned the Supreme Court for a writ of certiorari. During that time, neither party sought a stay of the issuance of our mandate, nor did they seek a trial setting from the district court after our mandate issued. Summage does not claim that the Government intentionally caused any delay. *See United States v. Shepard*, 462 F.3d 847, 864 (8th Cir. 2006) ("[T]here is no evidence that the Government intentionally caused any delay or filed pretrial motions to cause delay in order to gain a tactical advantage."). Summage attributes responsibility for the bulk of the delay to the court, not to the Government. Third, Summage did not assert his right to a speedy trial until he filed his motion to dismiss on February 26, 2008, nearly

-12-

four months after his October 29, 2007 trial date passed. When the Supreme Court denied Summage's petition for writ of certiorari, Summage did nothing to inform the district court and made no effort to seek an immediate trial. Fourth, Summage failed to establish that he suffered any prejudice from the delay, as discussed above. At most he listed the names of people who he vaguely claimed would have been able to offer some evidence to impeach Melissa Brown, his own witness, or to provide "corroborative evidence to substantiate the defense theory." Summage's assertions were insufficient to meet his burden. Accordingly, we conclude that Summage's right to a speedy trial under the Sixth Amendment was not violated because, although the delay was long, the Government was not the primary cause of the delay, Summage did not promptly assert his right to a speedy trial, and he failed to establish that he suffered prejudice as a result of the delay.

### C. Hybrid Representation

Summage appeals the district court's decision to deny him hybrid representation, which we review for abuse of discretion. *United States v. Einfeldt*, 138 F.3d 373, 378 (8th Cir. 1998).

A defendant has the right to be represented by counsel, *see Gideon v. Wainwright*, 372 U.S. 335, 344 (1963), or to represent himself, *see Faretta v. California*, 422 U.S. 806, 807 (1975), but a defendant does not have a "constitutional right to hybrid representation; it is available at the district court's discretion." *Einfeldt*, 138 F.3d at 378; *see also McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984). While a pro se defendant "must be allowed to control the organization and content of his own defense," *McKaskle*, 465 U.S. at 174, he "does not have a constitutional right to choreograph special appearances by counsel," *id.* at 183. Summage knowingly and voluntarily waived his right to counsel, and the district court did not abuse its discretion in denying Summage's request for hybrid representation.

**D. Continuance Motion**

Notwithstanding his speedy trial arguments, Summage sought a continuance less than a week before his trial began. Summage argues that the district court denied him due process by denying his motion for a continuance so that he could prepare his case. "We will not overturn a trial court's denial of a continuance unless the trial court clearly has abused its discretion, because continuances are not favored and should be granted only when a compelling reason has been shown." *United States v. Lefkowitz*, 125 F.3d 608, 620 (8th Cir. 1997). Summage claimed that he needed the continuance to review the Government's discovery files, including the films. However, by the time the case went to trial, the matter had been pending for more than two years. Summage filed numerous pro se filings that demonstrated his knowledge and familiarity with the case. In fact, one of the reasons he gave for representing himself was that he thought that he was more familiar with the facts of the case than his attorney was. The district court did not abuse its discretion in denying Summage's motion for a continuance. *See United States v. Hyles*, 479 F.3d 958, 968 n.3 (8th Cir. 2007).

**E. Evidentiary Rulings**

"We review a district court's evidentiary rulings for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." *United States v. Two Shields*, 497 F.3d 789, 792 (8th Cir. 2007).

In 1997, while living in Georgia, Summage was convicted of child molestation and cruelty to children after photographing himself molesting C.M., his then-girlfriend's seven-year-old daughter. He appealed the conviction, which was later overturned. At trial in this case, the district court permitted C.M. to testify about the incident over Summage's objection. Summage argues that the district court abused its discretion by allowing C.M.'s testimony regarding Summage's abuse of her.

Evidence of a defendant's prior bad acts is generally not admissible to prove the defendant's propensity to commit a crime. *See* Fed. R. Evid. 404(b). However, under Federal Rule of Evidence 414(a), in "a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 414(a).[3] Even if such evidence is relevant, it still "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see United States v. Bentley*, 561 F.3d 803, 815 (8th Cir. 2009) ("[E]vidence admitted pursuant to Rule 414 is subject to Rule 403's balancing test."), *petition for cert. filed*, --- U.S.L.W. --- (U.S. June 17, 2009) (No. 08-11005).

Summage argues that C.M.'s testimony was improperly admitted in violation of Rule 403. He argues that the two incidents were too dissimilar to be relevant and that the evidence of the incident involving C.M. was more prejudicial than probative. At the time C.M. was abused, she was seven years old, the abuse took place without her mother's knowledge, and Summage took Polaroid pictures of her. Here, the alleged victims were an infant and a toddler, the abuse took place with the knowledge and participation of the children's mother, and Summage filmed the children. Summage also notes that his defenses were different: with respect to the Georgia incident, he claimed that C.M. fabricated the incident at the instigation of her mother, who was upset that Summage ended their relationship; here, he claims that Melissa Brown made the tape with X.B. herself and invited another man to molest J.T. while she filmed it.

---

[3]Under Rule 414(d)(2), the crime of child molestation includes "any conduct proscribed by" 18 U.S.C. §§ 2251 to 2260A, which includes production and possession of child pornography.

Contrary to Summage's argument, we find that the incidents are strikingly similar and that any differences are immaterial. While C.M. was seven and the victims here were an infant and toddler, all of the victims were children of women he was dating, which gave him easy access to them. All three children lived with Summage at the time he abused them. While the incident with C.M. involved Polaroid pictures and this incident involved films, both featured recording devices that did not require outside development.

Moreover, the evidence that Summage abused C.M. was highly probative: it established that the defendant had a sexual interest in children and had previously created visual images of children engaged in sexual activity. "In order to exclude evidence under Rule 403 . . . it must be unfairly prejudicial." *Bentley*, 561 F.3d at 815. "'Because propensity evidence is admissible under Rule 414,' the fact that evidence of prior acts suggests a propensity to molest children, 'is not *unfair* prejudice.'" *Id*. (quoting *United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001)). The district court also gave a limiting instruction concerning C.M.'s testimony to the jury, which "diminishes the danger of unfair prejudice." *United States v. Lucas*, 521 F.3d 861, 866 (8th Cir. 2008). In addition, during the final instructions to the jury, the district court reminded the jury that it could use C.M.'s evidence only "to determine whether the defendant committed the acts charged in the Indictment" and that it should "[r]emember that the defendant was not charged in this case with committing crimes in Georgia and [it could not] automatically find the defendant guilty of any crime alleged in this case simply because [it] believe[d] the evidence relating to the alleged molestation in Georgia." Thus, we conclude that the district court did not abuse its discretion in allowing C.M.'s testimony.[4]

----

[4]Summage further argues that he should have been allowed to present evidence that the Georgia conviction related to his alleged conduct with C.M. had been reversed on appeal. However, the Government introduced only C.M.'s testimony about the incident, not evidence that Summage was convicted of any crime arising out of that conduct. *See* Fed. R. Evid. 414(a). In the absence of evidence of the conviction, evidence of the subsequent reversal would have confused the jury. The district court

Summage also challenges various other evidentiary rulings of the district court. After carefully considering each of his arguments, we conclude that the district court did not abuse its discretion with respect to any of these issues. *See United States v. Rabinowitz*, 56 F.3d 932, 934 (8th Cir. 1995). Even if any rulings were erroneous, they would have had little, if any, effect on the jury's verdict, given the strength of the evidence against Summage. *See United States v. Falls*, 117 F.3d 1075, 1078 (8th Cir. 1997).[5]

## III. CONCLUSION

Accordingly, we affirm Summage's conviction.

_____

did not abuse its discretion in excluding evidence of the reversal.

[5]Summage also argues that he was denied effective assistance of counsel. "In general, an ineffective assistance of counsel claim is not cognizable on direct appeal. Instead, such a claim is properly raised in a 28 U.S.C. § 2255 action." *United States v. Lewis*, 483 F.3d 871, 873 n.2 (8th Cir. 2007). "We will consider an ineffective assistance of counsel claim on direct appeal only in exceptional cases where the district court has developed a record on the ineffectiveness issue or where the result would otherwise be a plain miscarriage of justice." *Id.* Because neither of those exceptions applies here, we decline to address Summage's claim at this time.