# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 13-2041

———————————————

United States of America

*Plaintiff - Appellee*

v.

Edward J.S. Picardi, MD

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of South Dakota - Rapid City

——————————

Submitted: October 24, 2013
Filed: January 10, 2014

——————————

Before LOKEN, GRUENDER, and SHEPHERD, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

A jury found Edward J.S. Picardi guilty of thirteen counts of federal tax related offenses. On appeal, Picardi challenges the district court's[1] (1) replacement of two jurors with alternate jurors; (2) exclusion of a defense exhibit; (3) limitation of a

———————————

[1]The Honorable Jeffrey L. Viken, Chief Judge, United States District Court for the District of South Dakota.

defense witness's testimony; and (4) refusal to give a proffered theory-of-defense instruction. We affirm.

## I. Background

Picardi was a surgeon in western South Dakota. In the mid-1990s, Picardi became a client of Anthony Kritt, an attorney and a certified public accountant. From 1997 until 2003, Picardi participated in an "employee leasing program" promoted and run by Kritt that required Picardi to enter a contract with Montrain Services, Ltd., an Irish corporation, to lease his services as a physician. Montrain Services contracted with Professional Leasing Services, Inc., a Nevada corporation that was operated by Kritt, to provide Picardi's services to Professional Leasing Services. In turn, Professional Leasing Services contracted with Picardi's medical group to "lease" Picardi's services to it.

Picardi's income from this program was distributed in a manner designed to avoid taxes. Picardi's medical group paid Professional Leasing Services a "leasing fee" for Picardi's medical services. Professional Leasing Services then paid Picardi a small portion of this "leasing fee" as wages, which Picardi reported as income on his tax returns. In a series of complex transactions, the other, larger portion of the "leasing fee" was transferred into foreign financial accounts set up for Picardi. Picardi did not report this portion as income on his federal income tax returns from 1999 until 2003. On paper, the unreported portion of Picardi's income was "deferred compensation" inasmuch as he was supposed to be unable to access it until he retired or turned seventy years old. Picardi did, however, access and use the funds through another series of complex transactions made to look like loans. Picardi further reduced his taxes by categorizing the portion of his income sent overseas as "professional leasing services" expenses on his medical practice's corporate income tax returns. In April 2003, Picardi withdrew from the "employee leasing program," but he continued to maintain his interest in the foreign accounts containing his

"deferred compensation." For the 2004 to 2008 tax years, Picardi failed to disclose to the Internal Revenue Service ("IRS") his financial interest in the foreign accounts.

A federal grand jury returned a superseding indictment charging Picardi with five counts of income tax evasion, in violation of 26 U.S.C. § 7201; five counts of filing a false return, in violation of 26 U.S.C. § 7606(1); and three counts of failing to file with the IRS a required form regarding his interests in foreign accounts, in violation of 31 U.S.C. §§ 5314 and 5322 and 31 C.F.R. §§ 103.24 and 103.27(c). Picardi proceeded to a jury trial. At trial, Picardi claimed that he had a good faith belief that the "deferred compensation" component of the "employee leasing program" was legal and that he relied upon the expert and legal advice of Kritt. The jury found Picardi guilty of all thirteen counts, and he was sentenced to 60 months' imprisonment. Picardi then timely filed this appeal.

## II. Discussion

### A. Replacement of Two Jurors

Twelve jurors and three alternate jurors were selected to serve on Picardi's jury. On the third day of trial, the district court announced that it had dismissed juror S.R. the previous night because S.R. "had a change in life circumstance." The court replaced S.R. with one of the alternate jurors. At the beginning of the ninth day of trial, the district court notified the parties that it had excused juror M.K. because M.K. "was finding the rigors of serving on this jury to be too burdensome . . . . [b]y virtue of age and the strain of trial." The court replaced M.K. with an alternate juror. Picardi did not object to the district court's decisions to replace either S.R. or M.K. Instead, in the case of S.R., Picardi stated that he had no issues to raise with the court before trial recommenced, and in the case of M.K., Picardi volunteered that M.K. was eighty years' old in order to "complete[] that issue for record purposes."

Picardi first argues that the district court abused its discretion by dismissing jurors S.R. and M.K. because the record does not provide a legitimate basis for the court's decision. We generally review a district court's decision to replace a juror for abuse of discretion. *United States v. Cannon*, 475 F.3d 1013, 1023 (8th Cir. 2007). However, because Picardi did not object, we review the district court's decision for plain error. *See United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989). To show plain error, Picardi must establish that there is "(1) 'error,' (2) that is 'plain,' and (3) that it 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). If Picardi establishes all three conditions, we may exercise our "discretion to notice a forfeited error, but only if . . . the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 467 (alteration in original) (quoting *Olano*, 507 U.S. at 732).

Picardi has failed to demonstrate that the district court committed error, much less plain error. A district court may impanel alternate jurors to replace original jurors "who are unable to perform or who are disqualified from performing their duties." Fed. R. Crim. P. 24(c)(1). "The substitution of an alternate for a juror for reasonable cause is within the prerogative of the trial court and does not require the consent of any party." *United States v. Bad Cob*, 560 F.2d 877, 879 (8th Cir. 1977) (quoting *United States v. Ellenbogen*, 365 F.2d 982, 989 (2d Cir. 1966)). While the record here may not be developed fully because Picardi did not object and seek further explanation, it sufficiently discloses the district court's reason for replacing each juror. With respect to S.R., the court found that S.R. could not continue because of a "change in life circumstance." With respect to M.K., the court found M.K. "was finding the rigors of serving on this jury to be too burdensome . . . . [b]y virtue of age and the strain of trial." Picardi does not dispute that these are reasonable grounds for replacing a juror, and he has not presented any evidence that these grounds were not present. Accordingly, "we cannot say that [Picardi's] claim amounts to plain error."

*Thompson*, 866 F.2d at 272 (quoting *United States v. Udey*, 748 F.2d 1231, 1240 (8th Cir. 1984)).

Picardi next argues that by dismissing the two jurors outside of his presence and that of his attorney, the district court violated his right to be present at a critical stage of the proceedings against him as guaranteed by the Sixth Amendment, the Fifth Amendment's Due Process Clause, and Federal Rule of Criminal Procedure 43.[2] Again, since neither Picardi nor his attorney objected to their absence when the jurors were dismissed, we review for plain error. *See id.*; *see also United States v. Runyon*, 707 F.3d 475, 517-18 (4th Cir. 2013). "[T]he right to personal presence at all critical stages of the trial . . . [is a] fundamental right[] of each criminal defendant." *Rushen v. Spain*, 464 U.S. 114, 117 (1983). "A criminal defendant's right to be present at every stage of a criminal trial is rooted, to a large extent, in the Confrontation Clause of the Sixth Amendment and is protected to some extent by the Due Process Clause of the Fifth and Fourteenth Amendments." *United States v. Smith*, 230 F.3d 300, 309 (7th Cir. 2000) (internal citation omitted). Rule 43 codified this right; the codified right expressed in Rule 43, however, "is broader than the constitutional right, and includes the right of the criminal defendant to be present during all stages of his or her trial." *Id.* at 309-10; *see also United States v. Gunter*, 631 F.2d 583, 589 (8th Cir. 1980).

First, Picardi's Sixth Amendment rights have not been implicated, "as no witness or evidence against the defendant was presented" when the district court dismissed the jurors. *Smith*, 230 F.3d at 310; *see also Olszewski v. Spencer*, 466 F.3d 47, 64 (1st Cir. 2006) ("We see no basis for Olszewski's claim that the judge's action

---

[2]Without providing any analysis or development in his briefs, Picardi claims that the manner in which the district court replaced the jurors "also implicates his right to effective assistance of counsel." Because Picardi did not develop this issue in his briefs as required, he has waived his argument. *United States v. Frausto*, 636 F.3d 992, 998 (8th Cir. 2011).

in excusing the juror violated his Sixth Amendment rights."). Second, even if we were to assume that the district court violated Picardi's due process rights or Rule 43, Picardi "has failed to show that the district court's error satisfies the third prong of *Olano*—to wit, that the error affected [Picardi's] 'substantial rights.'" *Runyon*, 707 F.3d at 517 (quoting *Olano*, 507 U.S. at 732). The district court notified Picardi of the court's dismissal of each juror, and in each instance, the court provided him with an opportunity to object or make a record. At no point did Picardi object, and in the case of M.K., Picardi even volunteered her age in order to "complete[] that issue for record purposes." The district court replaced M.K. and S.R. with alternate jurors who were subject to and selected during the same voir dire process, at which both Picardi and his attorney were present, as the two dismissed jurors. Thus, the two replacement jurors did not create a "drastic shift in the jury's composition." *United States v. Evans*, 352 F.3d 65, 70 (2d Cir. 2003). The replacement of the jurors occurred before the case was sent to the jury for deliberations, and there is no indication that the remaining jurors were adversely influenced by the district court's decision to replace each juror. *See id.* at 69-70.

The lack of prejudice in this case is particularly clear because "counsel was informed of the communications [when trial reconvened] at which time there was no suggestion of actual or potential prejudice." *Olszewski*, 466 F.3d at 64-65. "Had there been any risk of prejudice from the substitution[s], one would have expected [Picardi's] lawyer to have vigorously objected . . . . It would set a poor precedent to allow a party to remain silent when a substitution is announced, await the verdict, and lodge an objection only when the jury's determination was adverse." *Runyon*, 707 F.3d at 518. Accordingly, Picardi's claim "fails not only under *Olano*'s third prong, but its fourth prong as well, as our refusal to reverse does not result in any 'miscarriage of justice.'" *Runyon*, 707 F.3d at 518 (quoting *Olano*, 507 U.S. at 736).[3]

---

[3]In his reply brief, Picardi suggests that the district court's dismissal and subsequent replacement of the two jurors outside of his presence constitutes structural

## B. Exclusion of Exhibit 621

"We review a district court's evidentiary rulings for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." *United States v. Summage*, 575 F.3d 864, 877 (8th Cir. 2009) (quoting *United States v. Two Shields*, 497 F.3d 789, 792 (8th Cir. 2007)).

---

error, and thus, prejudice should be presumed. As Picardi conceded at oral argument, he first raised this contention in his reply brief. Generally, we do not consider arguments raised for the first time in a reply brief, *United States v. Griggs*, 71 F.3d 276, 282 (8th Cir. 1995), and we decline to do so in this case. Even if we were to consider this argument, however, we would reject it. Indeed, it is an open question whether an unpreserved structural error automatically satisfies the third prong of the plain-error test. *Puckett v. United States*, 556 U.S. 129, 140-41 (2009). We would not need to answer that question here because the district court's replacement of the two jurors does not constitute structural error. Structural errors are "defects affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Becht v. United States*, 403 F.3d 541, 547 (8th Cir. 2005) (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)). These errors "call into question the very accuracy and reliability of the trial process," *United States v. Jones*, 662 F.3d 1018, 1027-28 (8th Cir. 2011) (quoting *McGurk v. Stenberg*, 163 F.3d 470, 474 (8th Cir. 1998)), *cert. denied*, 132 S. Ct. 2733 (2012), and "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence,'" *Neder*, 527 U.S. at 8-9 (quoting *Rose v. Clark*, 578 U.S. 570, 577-78 (1986)). Structural errors "have been recognized in a very limited set of circumstances, such as 'the complete denial of counsel, a biased judge, racial discrimination in jury composition, denial of a public trial, and a defective jury instruction on the reasonable-doubt standard of proof.'" *United States v. Jones*, 662 F.3d 1018, 1027-28 (8th Cir. 2011) (quoting *Becht*, 403 F.3d at 547), *cert. denied*, 132 S. Ct. 2733 (2012). The error alleged by Picardi would not be structural because "[u]nlike such defects as the complete deprivation of counsel or trial before a biased judge," it "does not *necessarily* render a criminal trial unfair or an unreliable vehicle for determining guilt or innocence." *Neder*, 527 U.S. at 9.

During Picardi's cross-examination of IRS Special Agent Christopher Wright, Picardi sought to introduce Exhibit 621, an email sent to Kritt containing an editorial that criticizes the IRS's policies regarding offshore bank accounts and describes a new "amnesty" program offered by the IRS. Kritt had forwarded the email to Randy Brodnik, another physician who also participated in an "employee leasing program" run by Kritt, but not to Picardi.[4] The Government objected to the admission of the exhibit. The district court found that the unknown identity of the author of the editorial, the author's opinions about the IRS's policies, and the explanation of the changes in the IRS's regulations of offshore accounts would likely confuse the issues for the jury. Thus, the district court excluded Exhibit 621 under Federal Rule of Evidence 403, concluding the evidence was "not relevant in such a way as to have probative value that would overcome its likely confusion of issues for the jury."

Picardi first argues that the district court abused its discretion by applying the incorrect standard for exclusion of evidence under Rule 403. Picardi observes that the district court's explanation for refusing the exhibit differs from the text of Rule 403, which permits the exclusion of relevant evidence only "if its probative value is *substantially* outweighed by a danger of . . . confusing the issues." Fed. R. Evid. 403 (emphasis added). Picardi asserts that this discrepancy in phrasing demonstrates that the district court applied the wrong standard, considering whether the risk of jury confusion outweighed the probative value of the evidence rather than whether it *substantially* outweighed the probative value. However, a trial court is not required to quote an evidentiary rule verbatim when making a ruling. *Wise v. Bowersox*, 136 F.3d 1197, 1203 (8th Cir. 1998) ("The court did not quote the [legal] standard verbatim in making its finding, but it was not required to do so: 'Trial judges are presumed to know the law and to apply it in making their decisions.'" (quoting *Walton v. Arizona*, 497 U.S. 639, 653 (1990))); *see also Wheeling Pittsburgh Steel*

---

[4]Brodnik was indicted separately and acquitted on tax charges similar to those brought against Picardi.

*Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 716 & n.1 (8th Cir. 2001) (upholding the district court's evidentiary ruling under Rule 403, even though the district court did not explicitly mention the rule). Therefore, we are not convinced that the district court applied the incorrect standard.

Picardi next argues that the district court abused its discretion by excluding Exhibit 621 under Rule 403. Picardi argues that the district court should have admitted Exhibit 621 because it supported his good faith belief and reliance-on-counsel defenses. Picardi claims Kritt's failure to forward the article to Picardi suggests that Kritt knew the program was illegal and sought to hide the IRS amnesty program from Picardi. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury." Fed. R. Evid 403. "In reviewing a district court's evidentiary ruling under Rule 403, we accord 'great deference [to] the district court's balancing. . . .'" *United States v. Pumpkin Seed*, 572 F.3d 552, 558 (8th Cir. 2009) (alteration in original) (quoting *United States v. Ruiz*, 412 F.3d 871, 881 (8th Cir. 2005)).

We conclude that "reversal is inappropriate because the record demonstrates that the district court engaged in the required balancing process and properly found that admitting [Exhibit 621] would violate Rule 403." *Id.* Exhibit 621 had limited probative value because it did not establish that Kritt never informed Picardi about the amnesty program. And we agree with the district court that the unknown editorial author's unsubstantiated opinions about the IRS's regulations of offshore accounts contained in Exhibit 621 were likely to confuse the jury. Therefore, the district court did not abuse its discretion by excluding Exhibit 621. Additionally, Exhibit 621 was cumulative of Picardi's testimony. Picardi testified that Kritt never advised him of any IRS amnesty program and that he was unaware of such a program. Thus, Picardi was able to testify to the same information that he sought to convey through Exhibit 621. Therefore, the district court's exclusion of Exhibit 621, even if it were improper,

did not affect Picardi's "substantial rights" nor did it have "more than a slight influence on the verdict," making reversal inappropriate. *See Summage*, 575 F.3d at 877 (quoting *Two Shields*, 497 F.3d at 792).

## C. Limitation on the Scope of Brodnik's Testimony

During his case-in-chief, Picardi called Brodnik as a witness. On cross-examination, Brodnik testified that he had amended his 1998 to 2003 federal income tax returns to include his "deferred compensation" and paid additional taxes for those years. He also testified that he was aware that Picardi had not amended his tax returns nor paid any additional back taxes. On re-direct, Picardi sought to ask whether he had told Brodnik that he did not do so based on Kritt's advice. The Government objected. The district court sustained the objection, holding that this issue was "completely irrelevant" to the elements of the charges or to the defense's theory.

Picardi argues the district court abused its discretion by limiting Brodnik's testimony because the solicited testimony was relevant to his reliance-on-counsel defense. As explained above, "[w]e review a district court's evidentiary rulings for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." *Summage*, 575 F.3d at 877 (quoting *Two Shields*, 497 F.3d at 792). We may affirm a district court's evidentiary ruling on any ground supported by the record even if that ground was not a basis for the district court's ruling. *United States v. Wintermute*, 443 F.3d 993, 1000 (8th Cir. 2006). The testimony Picardi sought to elicit from Brodnik was inadmissible hearsay. Picardi wanted Brodnik to testify to Picardi's out-of-court statement to prove the truth of the matter asserted—that Picardi did not amend his tax returns and pay back taxes based on Kritt's advice. Therefore, the district court's exclusion of the testimony that Picardi sought to elicit was proper because it is inadmissable hearsay, whether or not it was relevant to Picardi's

reliance-on-counsel defense. *See* Fed. R. Evid. 801. Picardi does not argue that this excluded testimony falls within an exception to Federal Rule of Evidence 801, and it does not. Thus, the district court did not abuse its discretion by excluding the testimony.

**D. Theory-of-Defense Instruction**

Picardi argues that the district court abused its discretion by refusing to give his proposed theory-of-defense instruction, which stated that a defendant could not form the requisite intent to violate a vague or highly debatable tax law.[5] "We review a district court's rejection of a defendant's proposed instruction for abuse of discretion, and we recognize that district courts are entitled to broad discretion in formulating the jury instructions." *United States v. Ironi*, 525 F.3d 683, 688 (8th Cir. 2008) (quoting *United States v. Hayes*, 518 F.3d 989, 994 (8th Cir. 2008)).

---

[5]Picardi's proposed instruction reads:

> Where the tax law is vague or highly debatable, a defendant lacks the requisite intent to violate it. Criminal prosecution for the violation of an unclear duty itself violates the clear constitutional duty of the government to warn citizens whether particular conduct is legal or illegal.

> A defendant cannot be guilty of willfully evading and defeating income tax when the law surrounding the deductibility of certain expenses is unsettled and there is no direct authority pointing to a ready answer. The tax law is "unsettled" where individuals could plausibly reach directly opposing, reasonable and well-supported, conclusions regarding the law's interpretation.

-11-

A defendant is not entitled to a jury instruction regarding an issue reserved for the court. *See United States v. Hiland*, 909 F.2d 1114, 1127 n.17 (8th Cir. 1990). Picardi's proposed theory-of-defense instruction presents an issue reserved for the court because the question of whether a tax law is void for vagueness is a question of law for the court to decide, not the jury. *United States v. Mallas*, 762 F.2d 361, 364 n.4 (4th Cir. 1985); *see id.* ("The uncertainty of a tax law, like all questions of vagueness, is decided by the court as an issue of law."); *see also Hiland*, 909 F.2d at 1127 n.17 ("The issue whether the vagueness doctrine precluded conviction of [the defendant] . . . presented a question of law for the court to decide, not the jury."). Therefore, the district court did not abuse its discretion by refusing to give Picardi's proposed instruction. *See United States v. House*, 684 F.3d 1173, 1207 (11th Cir. 2012) (finding no abuse of discretion where the district court refused to give the defendant's instruction because "the issue of whether a [law] is void for vagueness is a question of law for the court to determine" (alteration in original) (quoting *United States v. Paradies*, 98 F.3d 1266, 1284 (11th Cir. 1996)).

## III. Conclusion

For the reasons explained above, we affirm.

_____