# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1210
_____

United States of America

*Plaintiff - Appellee*

v.

Antonio Mashawn Airhart

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: April 17, 2025
Filed: August 8, 2025
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

KELLY, Circuit Judge.

A jury convicted Antonio Mashawn Airhart of unlawful possession of ammunition. Airhart appeals, and we affirm.

I.

A.

The jury heard the following evidence, which we recount "in the light most favorable to the jury's verdict." United States v. Carnes, 22 F.4th 743, 746 (8th Cir. 2022) (quoting United States v. Galloway, 917 F.3d 631, 632 (8th Cir. 2019)).

On the afternoon of July 2, 2022, Airhart and his then-girlfriend, Tywanna Buchanan, discovered that Buchanan's car[1] had been vandalized. Someone had slashed the tires and poured sugar into the gas tank. Buchanan believed that her neighbor, Angelina Ortega—whose apartment was two doors down from Buchanan's—was involved in the vandalism.

Later that day, Ortega's brother, Martin Diaz, and his family drove to see Ortega. When they arrived, Diaz's wife and son went inside Ortega's apartment, while Diaz stayed outside. At some point, Airhart came from the general direction of Buchanan's apartment, walked up "kind of aggressive[ly]" to Diaz, and asked if he was Ortega's brother. Diaz said yes. Airhart told Diaz, "I know you guys did this—your sister did this to the car. Your sister is going to have to pay us back for the damages."

Meanwhile, Ortega arrived, parking her car nearby. Ortega told Airhart to back away from Diaz, and she grabbed Airhart by the shoulder. Then, Buchanan and Airhart's sister, Brittany Airhart, came on the scene, with Buchanan "yelling and screaming" at Ortega. Buchanan and Ortega got into a physical fight. Diaz then said, "Get off of my sister." Airhart yelled, "Let them fight, gang. Let them fight, gang." Diaz "turned aggressively" toward Airhart "to try to square up with him," and Airhart jumped back.

---

[1]Buchanan was borrowing the car from a coworker.

Diaz then saw that Airhart had a firearm in his waistband. Diaz went back inside his vehicle and heard a shot. When he turned around, Airhart "shot [him] in the face." In response, Diaz grabbed his own firearm (a Ruger 57 with 5.7 x 28-millimeter ammunition), shot at Airhart, and ran to Ortega's apartment while shooting back in Airhart's direction.

Airhart, Diaz, Buchanan, Brittany Airhart, and Ortega were the only five people present during the shooting. None of the latter three—Buchanan, Brittany Airhart, or Ortega—had a gun, and while all three heard gunshots, none saw who fired them.

Law enforcement eventually arrived on the scene, and, while investigating the incident, recovered fifteen total 5.7 x 28-millimeter shell casings, two of which were just inside Ortega's residence. Officers also recovered thirteen 10-millimeter shell casings on scene: eleven Armscor and two Hornady. They also found a Ruger 57, but did not find a 10-millimeter pistol.

Video footage from nearby security cameras captured some of the gunfire. The footage shows a man holding something in his right hand, squatting down, and running toward Buchanan's apartment.

In the hours following the shooting, law enforcement executed a search warrant at Buchanan's apartment. Inside a dresser in the master bedroom, an officer found an empty Winchester 10-millimeter ammunition box, six loose rounds of 9-millimeter ammunition, and pieces of mail addressed to Airhart. The ammunition box had a tray inside, which contained a fingerprint that "originated from the same source as the impressions on a card bearing the name Antonio Mashawn Airhart."

B.

Based on the theory that Airhart shot Diaz, the government charged Airhart with one count of unlawful possession of ammunition—eleven Armscor 10-

-3-

millimeter and two Hornady 10-millimeter—after having previously been convicted of a felony and a misdemeanor crime of violence, in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(9), and 924(a)(8). Before trial, Airhart moved to exclude evidence of the empty box of Winchester 10-millimeter ammunition and six rounds of 9-millimeter ammunition found in Buchanan's residence, arguing such items were inadmissible under, among other rules, Federal Rule of Evidence 404. The district court[2] denied the motion.

The jury found Airhart guilty. The district court sentenced him to the maximum sentence of 180 months in custody, see 18 U.S.C. § 924(a)(8), to be followed by three years of supervised release. Airhart appeals.

## II.

## A.

Airhart argues the district court made two evidentiary errors, each of which he asserts requires a new trial. First, he argues that the district court erred in admitting the empty box of Winchester 10-millimeter ammunition and the loose 9-millimeter ammunition found in Buchanan's bedroom drawer. We review this first evidentiary ruling for abuse of discretion. United States v. Patterson, 131 F.4th 901, 909 (8th Cir. 2025).

Airhart asserts the empty box and 9-millimeter ammunition were "improper propensity evidence." See Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). The government counters, arguing that the challenged evidence was properly admitted as intrinsic. See United States v. Wright, 993 F.3d 1054, 1061 (8th Cir. 2021)

---

[2]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

(explaining that "Rule 404(b) does not apply . . . to evidence of other wrongful conduct if that evidence is *intrinsic* to the charged offense"). Evidence of another crime, wrong, or other act is intrinsic if it "'completes the story' of the charged crime, 'logically . . . prove[s] any element,' or in some cases, 'shows consciousnesses of guilt.'" United States v. Grady, 88 F.4th 1246, 1258 (8th Cir. 2023) (alterations in original) (quoting United States v. Vaca, 38 F.4th 718, 721 (8th Cir. 2022)).

The government has failed to convince us that the contested evidence was intrinsic to the charged offense. The brand name on the empty 10-millimeter ammunition box is different than the brand on the 10-millimeter shell casings found at the site of the shooting. And the 9-millimeter bullets are a different size altogether. The government stresses the "geographic and temporal proximity between the shooting and the challenged evidence": before the shooting, Airhart came from the direction of Buchanan's apartment and after the shooting, he retreated to the same apartment. But lacking is any connection between the empty box and extra ammunition in the apartment and the shooting outside. Though a jury could reasonably find that the fingerprint inside the box belonged to Airhart, it had been there for an unknown amount of time, and the government otherwise presented no evidence that Airhart had touched the box or any of the 9-millimeter rounds in the lead-up to, during, or after the shooting. As a result, and contrary to the government's suggestion otherwise, this evidence did not speak to Airhart's "guilty conscience." United States v. Mosby, 101 F.3d 1278, 1283 (8th Cir. 1996). Nor did it help "complete[] the story" of the charge Airhart faced or provide any context for the shooting. Grady, 88 F.4th at 1258 (quoting Vaca, 38 F.4th at 721). As such, it is not intrinsic evidence.

In the alternative, the government argues for the first time on appeal that the evidence was admissible under Rule 404(b), reminding us that "[w]e may affirm a district court's evidentiary ruling on any ground supported by the record." United States v. Picardi, 739 F.3d 1118, 1126 (8th Cir. 2014). But as the proponent of the evidence, the government had the burden of articulating at the district court a

permissible purpose for why this evidence was admissible. See United States v. Goodman, 88 F.4th 764, 768 (8th Cir. 2023); see also United States v. Turner, 781 F.3d 374, 390 (8th Cir. 2015) (explaining the government's burden and stating that "[s]imply asserting—without explanation—that the [evidence of any other crime, wrong, or act] is relevant to a material issue such as intent or knowledge is not enough to establish its admissibility under the Federal Rules"). Determining whether evidence is admissible under Rule 404(b) is a case-specific inquiry. See Turner, 781 F.3d at 390. Because the government failed to carry its burden at the district court, we decline the invitation to search for any possible non-propensity purposes this evidence could have served.

We nonetheless conclude that the error in admitting the empty box and extra ammunition was harmless. See United States v. Johnson, 860 F.3d 1133, 1139 (8th Cir. 2017) ("We will reverse 'only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict.'" (quoting Picardi, 739 F.3d at 1124)). The admissible evidence against Airhart was strong—nearly overwhelming. Diaz, who was face-to-face with Airhart, testified that Airhart shot him. True, the jury heard testimony about Diaz's motives to testify, shifting accounts of what happened, and contrary statements of another witness. But Diaz's testimony was consistent with the video surveillance footage. And beyond Diaz's testimony, the location of the spent 10-millimeter shell casings aligned with Airhart's movements. Furthermore, no one disputes that, of the five people present at the scene, only two had firearms—allowing for a near-definitive process-of-elimination inference that Airhart fired the shots and thus possessed the 10-millimeter ammunition. Moreover, the government made no mention of the 9-millimeter bullets at closing argument and only a passing reference to the empty box. We recognize Airhart's concern that the jury could have misunderstood which ammunition he was charged with possessing. But given the evidence in support of Airhart's role in the shooting, as well as the jury instructions identifying the specific ammunition he was charged with possessing, this concern is substantially mitigated. Collectively, on this record, the empty box and extra ammunition evidence had no

more than "a slight influence on the verdict." Johnson, 860 F.3d at 1139 (quoting Picardi, 739 F.3d at 1124).

Second, Airhart asserts a new trial is required based on portions of Detective Traishondus Bunch's testimony. At trial, Bunch referenced the security camera video footage and identified the man running towards Buchanan's house and holding something in his hand as Airhart. Bunch also said "[i]t appears that [Airhart]'s holding a firearm in the video," and "I believe that Mr. Airhart was firing rounds back" because "[i]f he were to just be running . . . , he would be running one direction, but he's got an athletic stance, and his chest is facing towards another person." Airhart did not object.

On appeal, Airhart argues Bunch improperly offered opinion testimony as a lay witness when he said that the video surveillance footage appeared to show Airhart holding and shooting a firearm.[3] Because Airhart failed to object to this testimony, we review for plain error. United States v. Kelley, 861 F.3d 790, 798 (8th Cir. 2017).[4] "To prevail under plain error review, [Airhart] must show: (1) error; (2) that is plain; (3) that affects his substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Cameron, 99 F.4th 432, 435 (8th Cir. 2024).

---

[3]Airhart does not challenge Bunch's testimony identifying him on the video.

[4]The government suggests that Airhart invited this alleged error. See United States v. Adejumo, 772 F.3d 513, 535 (8th Cir. 2014) (explaining invited error occurs "when the trial court announces its intention to embark on a specific course of action and defense counsel specifically approves *of that course of action*" (emphasis added) (quotation omitted)). Here, Airhart never suggested, and the district court never "announce[d]," that Bunch was permitted to give the contested testimony. See id. Airhart did not attempt to "lead[] the district court 'down a primrose path' and later, on appeal, profit[] from the invited error." United States v. Stricker, 4 F.4th 624, 627 (8th Cir. 2021) (quoting United States v. Gates, 709 F.3d 58, 63 (1st Cir. 2013)). Thus, Airhart did not invite the error of which he now complains.

"Rule 701 provides that if a witness is not testifying as an expert, then any testimony by the witness expressing his or her opinion or inferences is limited to those that are rationally based on the witness's perception and helpful to understanding the witness's testimony or determining a fact in issue." United States v. Smith, 591 F.3d 974, 982 (8th Cir. 2010) (quoting U.S. Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 690 (8th Cir. 2009)); see also United States v. Lomas, 826 F.3d 1097, 1106–07 (8th Cir. 2016) (concluding witness's testimony about defendant's terminology was "helpful" under Rule 701 because the testimony was based "on [the witness's] direct observations and perceptions of [the defendant]").

Here, Bunch was not present on the scene to make any direct observations of the events as they unfolded. Rather, Bunch based his opinion entirely on his own review of the footage. He testified: "Based off of this video, I believe that Mr. Airhart was firing rounds back," and "[i]t appears that he's holding a firearm in the video." The jury also saw the video footage and could, like Bunch, draw its own conclusions. The government notes the video had gaps in it, and Bunch's familiarity with the camera system allowed him to provide "helpful" information about those gaps. But Airhart does not challenge that testimony. He challenges Bunch's testimony that Airhart was holding and shooting a firearm—conclusions he drew simply from watching the video, adding nothing that the jury could not conclude on its own. See United States v. Williams, 41 F.4th 979, 985 (8th Cir. 2022) (upholding admission of officer's testimony about surveillance footage because the "officer did more than merely narrate the video"); United States v. Fulton, 837 F.3d 281, 295–96 (3d Cir. 2016) (holding district court erred in admitting officers' comparison of defendant and alternative suspect with robber in surveillance footage because the officers "were no better equipped than the jurors to compare the suspect's appearance with that of [the defendant] and [an alternative suspect]"). Bunch's challenged testimony was not admissible under Rule 701.

But even if this error is plain, it did not affect Airhart's substantial rights. See United States v. Alexander, 114 F.4th 967, 975 (8th Cir. 2024) (explaining that an error affects a defendant's substantial rights only if the defendant can "show a

reasonable probability that, but for the error, the outcome of the proceeding would have been different" (quoting United States v. Patterson, 68 F.4th 402, 421 (8th Cir. 2023))). The testimony was very brief. See Williams, 41 F.4th at 985 ("Nor did this brief testimony 'so invade[] the province of the jury that we cannot with confidence say that there [is] no significant possibility that it had substantial impact on the jury.'" (alterations in original) (quoting United States v. Peoples, 250 F.3d 630, 642 (8th Cir. 2001))). And in closing argument, the government did not mention the challenged testimony, instead referencing the video footage itself. This error does not warrant a new trial.

B.

Finally, Airhart argues the government failed to produce sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that Airhart shot, and thus possessed, the 10-millimeter ammunition. Our review is de novo, viewing the evidence in the light most favorable to the verdict and resolving conflicts and drawing all reasonable inferences in support of the verdict. See United States v. Thompson, 133 F.4th 779, 786 (8th Cir. 2025).

For the same reasons we have concluded that the evidentiary errors were harmless, sufficient evidence supports the verdict—even without the contested evidence. See United States v. Matheny, 42 F.4th 837, 842 (8th Cir. 2022) ("A defendant is entitled to a judgment of acquittal due to insufficient evidence only if no reasonable factfinder could find him guilty beyond a reasonable doubt."). Though Diaz's testimony was challenged on cross-examination, it was corroborated by other evidence presented at trial. And because his testimony was neither "internally inconsistent" with the government's allegations nor "incoherent," "implausible," or "directly at odds with objective evidence," we see no grounds to disturb the jury's credibility finding. United States v. Hodge, 594 F.3d 614, 618 (8th Cir. 2010); see also United States v. Young, 129 F.4th 459, 473 (8th Cir. 2025) ("[I]t is well settled that 'a victim's testimony alone can be sufficient to support a guilty verdict.'" (quoting United States v. Kenyon, 397 F.3d 1071, 1076 (8th Cir. 2005))).

## III.

We affirm.

_____