# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3028

_____

United States of America

*Plaintiff - Appellee*

v.

Kendall Streb

*Defendant - Appellant*

------------------------------

Human Trafficking Institute

*Amicus on Behalf of Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: October 22, 2021
Filed: June 7, 2022

_____

Before ERICKSON, GRASZ, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

A jury found Kendall Streb guilty of various sex-trafficking, firearm, and drug crimes. Although his challenges run the gamut from alleged discovery violations to complaints about his sentence, we affirm.

## I.

An indictment charged Streb with child sex-trafficking, illegal possession of firearms, and drug possession and distribution. The drug and firearm charges arose out of his line of work: dealing methamphetamine.

Streb also paid for sex, using both cash and drugs. The sexual encounters started with Minor Victim B, but soon involved her friends too. After law enforcement caught wind of his criminal activities, officers searched his home and found firearms in a closet near some drugs that were packaged for sale.

At trial, a jury found Streb guilty of multiple crimes,[1] which earned him a sentence of 268 months in prison. He argues that the district court[2] erred from start to finish, and at nearly every point in between.

## II.

Streb's first set of arguments focus on the government's eve-of-trial disclosure about benefits it had provided to several minor victims. The district court

---

[1]Sex trafficking of children, 18 U.S.C. § 1591(a)(1), (b)(2); distributing methamphetamine to a minor, 21 U.S.C. §§ 841(a)(1), 859; possessing methamphetamine with intent to distribute it, 21 U.S.C. § 841(a)(1), 841(b)(1)(C); possessing a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i); and unlawfully possessing a firearm, 18 U.S.C. §§ 922(g)(3), 924(a)(2).

[2]The Honorable Stephanie M. Rose, then United States District Judge for the Southern District of Iowa, now Chief Judge, United States District Court for the Southern District of Iowa.

denied his motion to dismiss the indictment or, in the alternative, to exclude their testimony. We review this decision for an abuse of discretion. *See United States v. Sandoval-Rodriguez*, 452 F.3d 984, 989 (8th Cir. 2006) (exclusion of testimony); *United States v. DeCoteau*, 186 F.3d 1008, 1009 (8th Cir. 1999) (dismissal of indictment).

A.

Forty-eight hours before Streb's trial was set to begin, the government sent defense counsel a short letter disclosing that state and federal law-enforcement officials, including members of the United States Attorney's Office, had provided basic necessities to Streb's minor victims, including meals, clothing, and personal-hygiene items. After defense counsel objected to the letter's lack of specificity, the district court ordered the government to supplement it.

The government returned later that day with more information. For the lunches it provided, for example, the government disclosed who attended and how much they cost. It also reported giving one of the victims $50 in donated gift cards for the purchase of school supplies.

According to Streb, these tardy disclosures justified one of two remedies: dismissal of the indictment or the complete exclusion of testimony from those who benefited. In the alternative, he was willing to settle for an evidentiary hearing. Despite characterizing the circumstances as "problematic," the district court offered an even more modest solution: a continuance. After consulting with Streb, defense counsel opted to move forward with jury selection instead.

The issue came up again after jury selection. At that point, the district court formally denied Streb's motion because the remedies he requested were too "extreme." Once again, however, the district court proposed alternatives: an appropriate jury instruction and "wide open cross-examination" to explore any potential bias.

B.

Streb argues that the district court abused its discretion by not doing more. If a party has committed a discovery violation, Federal Rule of Criminal Procedure 16(d)(2) provides a menu of options to remedy it: ordering additional discovery, granting "a continuance," excluding the "undisclosed evidence," and entering "any other order that is just under the circumstances." The choice of remedy depends on "whether the government acted in bad faith and the reason(s) for [the] delay in production"; "whether there [was] any prejudice to the defendant"; and "whether any lesser sanction [would have been] appropriate to secure future [g]overnment compliance." *United States v. Pherigo*, 327 F.3d 690, 694 (8th Cir. 2003).

Notably, Streb has difficulty explaining what rule or order the government violated. There was no constitutional violation because "due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial." *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963). Although the disclosure came later than Streb would have liked, the district court offered a continuance to make sure that defense counsel had time to consider its impact on the case. And besides, the information was not furnished "too late for the defendant to use it at trial." *Almendares*, 397 F.3d at 664. Defense counsel *actually* relied on it when cross-examining one of the victims.

Streb fails to identify any other possibility. Indeed, when questioned at oral argument, counsel could only surmise that the government's conduct in this case amounted to "what could be considered an ethical" and "tactical violation."[3] Oral

---

[3]In his brief, Streb suggests in passing that the government's practice of providing food, personal-hygiene products, and clothing to minor sex-trafficking victims is bribery. *See* 18 U.S.C. § 201(c)(2). As the Human Trafficking Institute points out in its amicus brief, however, every circuit to have considered this question, including ours, has disagreed. *See United States v. Ihnatenko*, 482 F.3d 1097, 1099–1100 (9th Cir. 2007) (collecting cases from the First, Third, Fourth, Fifth, Seventh,

Arg. at 15:10–15:24. But even if we were to assume what the government did adds up to a discovery violation, we would still conclude that the district court did not abuse its discretion by offering a continuance, a jury instruction, and "wide open cross-examination." *See* Fed. R. Crim. P. 16(d)(2)(B), (D).

## C.

Nor was an evidentiary hearing required to explore whether the government acted in bad faith. *See Pherigo*, 327 F.3d at 694. Following jury selection, the district court questioned the government at length about the benefits the witnesses received and the reasons for not disclosing them sooner. *See id.* The court then offered a continuance to Streb, which would have given defense counsel time to investigate the government's conduct, fine-tune his trial strategy, and potentially request additional discovery. The decision to offer a continuance rather than a hearing, particularly given the court's already in-depth questioning of the government, was not an abuse of discretion.

## III.

Trial brought the next set of objections, this time to three of the district court's evidentiary rulings. Our review is for an abuse of discretion, *United States v. Street*, 531 F.3d 703, 708 (8th Cir. 2008), keeping in mind that we will reverse only if an error "affected the defendant's substantial rights or had more than a slight influence on the verdict," *United States v. Picardi*, 739 F.3d 1118, 1124 (8th Cir. 2014) (citation omitted).

---

and Eighth Circuits); *United States v. Albanese*, 195 F.3d 389, 394 (8th Cir. 1999) (observing that this court "ha[s] a long history of allowing the government to compensate witnesses for their participation in criminal investigations").

## A.

The first evidentiary ruling was the district court's refusal to admit sexually explicit advertisements offering Minor Victim B's services as an escort. In addition to promoting sex-for-cash, the ads listed her age as nineteen. Streb's position is that, had the jury seen them, it would have concluded that he could not have known that she was only fifteen, which would have negated the mental-state requirement of the child-sex-trafficking offense. *See* 18 U.S.C. § 1591(a) (requiring knowledge or a "reckless disregard of the fact[] . . . that the person has not attained the age of 18 years"). According to the court, the advertisements were inadmissible because they were "offered to prove that a victim engaged in other sexual behavior," Fed. R. Evid. 412(a), and were substantially more prejudicial than probative, Fed. R. Evid. 403.

We need not decide whether the district court abused its discretion because the ruling had no "influence on" the jury's verdict. *See Picardi*, 739 F.3d at 1124 (citation omitted). According to another provision in the child-sex-trafficking statute, the government did not need to prove that Streb knew or recklessly disregarded Minor Victim B's age if he "had a reasonable opportunity to observe" her beforehand. 18 U.S.C. § 1591(c).

There is no dispute here that Streb had such an opportunity, which means that the government did not *also* have to prove that he "knew or recklessly disregarded" her age. *See United States v. Zam Lian Mung*, 989 F.3d 639, 643 (8th Cir. 2021) (stating that the government is "relieve[d]" from "proving the 'defendant knew, or recklessly disregarded'" the victim's age "when the facts demonstrate 'the defendant had a reasonable opportunity to observe the person . . . solicited'" (quoting 18 U.S.C. § 1591(c))); *see also United States v. Koech*, 992 F.3d 686, 688 (8th Cir. 2021) (noting that section 1591(c) "alter[s] the mens rea requirement regarding the victim's age"); *United States v. Whyte*, 928 F.3d 1317, 1329–30 (11th Cir. 2019) (explaining that the statute "unambiguously creates an independent basis of liability when the government proves a defendant had a reasonable opportunity to observe the victim"). Missing out on the chance to rebut a point that made no difference to the outcome

could not have "influence[d] . . . the verdict." *Picardi*, 739 F.3d at 1124 (citation omitted).

B.

The second evidentiary challenge fares no better than the first. This time, the focus is on the specific charge in Minor Victim B's juvenile-delinquency petition, which was dismissed before the trial in this case began. Streb's goal was to show that she was testifying to avoid a serious charge of her own.

The district court ruled that this line of questioning was off-limits. First, "juvenile adjudications" have limited admissibility. *See* Fed. R. Evid. 609(d) (providing that "[e]vidence of a juvenile adjudication is admissible under this rule" only if several requirements are met). And second, discussing the specific charge she faced would have been "inflammatory and highly prejudicial," not to mention that it would have "confused the issues before the jury." *See* Fed. R. Evid. 403.

Although Streb once again argues that the district court abused its discretion, any error in cutting off this line of questioning was harmless. Defense counsel was able to impeach Minor Victim B without getting into specifics, including probing her about the fact that she had previously been accused "of some crimes." He was also able to establish during the cross-examination of a detective that there had been a delinquency petition filed against her, which had been dismissed once she began cooperating with the government. Perhaps most importantly, cross-examination established that Minor Victim B understood that she would return to a juvenile-detention center if she refused to testify, which highlighted her possible pro-government bias. Having thoroughly attacked her credibility during cross-examination, defense counsel would have accomplished little more by discussing

-7-

the specific charge in the petition.[4]  *See United States v. Oakie*, 993 F.3d 1051, 1054 (8th Cir. 2021) (per curiam).

## C.

The third evidentiary challenge might be the most straightforward of all.  The district court limited defense counsel's ability to impeach two of the minor victims with their past inconsistent statements out of a concern for trial management and the risk of having inadmissible hearsay come in through the back door.  *See* Fed. R. Evid. 801(d)(1); *see also* Fed R. Evid. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth . . . avoid wasting time . . . and . . . protect witnesses from harassment or undue embarrassment."); Fed. R. Evid. 802 (prohibition on hearsay).

Once again, harmless error poses an obstacle for Streb.  As the government points out, defense counsel spent hours cross-examining both witnesses, including about their prior statements.  For his part, Streb cannot identify a single statement or passage that was closed off by the district court's ruling.  With otherwise strong evidence of guilt and no telling what the unspecified prior statements might have shown, any error here had, at most, only "a slight influence on the verdict." *Picardi*, 739 F.3d at 1124 (citation omitted).

## IV.

Once the government finished presenting its case, Streb moved for an acquittal on the illegal-possession-of-a-firearm count.  *See* 18 U.S.C. § 924(c)(1)(A) (possessing a firearm in furtherance of a drug-trafficking crime).  He admitted that

---

[4]For this reason, to the extent Streb argues that his Confrontation Clause rights were violated, *see Davis v. Alaska*, 415 U.S. 308, 315–16 (1974), any error was harmless beyond a reasonable doubt. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

he possessed a firearm, but claimed that the evidence did not show that he had done so "in furtherance" of a drug-trafficking crime. *Id.* We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict. *See United States v. Maloney*, 466 F.3d 663, 666 (8th Cir. 2006).

The in-furtherance element required the government to establish a "nexus" between Streb's possession of a firearm and a drug crime. *United States v. Sanchez-Garcia*, 461 F.3d 939, 946 (8th Cir. 2006) (citation omitted). The former must "further[], advanc[e] or help[] forward" the latter. *Id.* (citation omitted). "[A] jury can draw this inference if the firearm is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with drug trafficking." *United States v. White*, 962 F.3d 1052, 1056 (8th Cir. 2020) (quotation marks omitted).

The government's evidence followed this formula exactly. A search uncovered two firearms and three extra magazines in his bedroom closet, which was just a few feet away from packaged methamphetamine. It also revealed a firearm in his truck, which he used to move the drugs. Finally, expert testimony established a connection between guns and drug trafficking. Taken together, the evidence was sufficient for the jury to conclude that Streb kept firearms at his home and in his truck to protect the drugs he distributed. *See id.* (involving similar facts); *Sanchez-Garcia*, 461 F.3d at 947 (same).

V.

Sentencing also produced its own share of challenges. Leaving no stone unturned, Streb asks us to review three enhancements, the criminal-history calculation, and the substantive reasonableness of the sentence.

## A.

Multiple enhancements went into determining Streb's total offense level of 43. He complains about three of them: (1) a two-level enhancement for "unduly influenc[ing] a minor to engage in prohibited sexual conduct," U.S.S.G. § 2G1.3(b)(2)(B); (2) a two-level enhancement for using "a computer," *id.* § 2G1.3(b)(3); and (3) a five-level enhancement for "engag[ing] in a pattern of activity involving prohibited sexual conduct," *id.* § 4B1.5(b)(1). In evaluating each, we review "the district court's construction and application of the sentencing guidelines de novo and its factual findings for clear error." *United States v. Hagen*, 641 F.3d 268, 270 (8th Cir. 2011) (italics omitted).

### 1.

The undue-influence enhancement focuses on the "voluntariness of the minor's behavior." U.S.S.G. § 2G1.3 cmt. n.3(B). Streb's position is that the minors consented to the "prohibited sexual conduct," which takes the enhancement off the table. *See id.* § 2G1.3(b)(2)(B).

The problem with Streb's argument is that it does not account for the "rebuttable presumption that" the enhancement applies when the defendant "is at least 10 years older than the minor." *Id.* § 2G1.3 cmt. n.3(B). Streb was more than 30 years older than each of his victims, and he often exchanged drugs for sex with cash-strapped and methamphetamine-addicted minors. On this record, Streb came nowhere close to rebutting the presumption of undue influence.

### 2.

The evidence also established that Streb used his cellphone to arrange the "prohibited" sexual encounters. U.S.S.G. § 2G1.3(b)(3). A two-level enhancement is available if the "offense involved the use of a computer . . . to . . . facilitate the travel of . . . the minor to engage in prohibited sexual conduct." *Id.* We have already

held that a cellphone is a "computer," at least under the "broad" statutory definition that applies here. *United States v. Kramer*, 631 F.3d 900, 903 (8th Cir. 2011); *see also* U.S.S.G. § 2G1.3(b)(3) cmt. n.1 (explaining that "'[c]omputer' has the meaning given that term in 18 U.S.C. § 1030(e)(1)" (citation omitted)).

3.

We can also make quick work of Streb's objection to the five-level enhancement for "engag[ing] in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b)(1). "[A]t least two separate occasions" makes out a pattern, *id.* § 4B1.5(b)(1) cmt. n.4(B)(i), and here, the district court found that Streb paid *three* minors for sex, two on multiple occasions. *See id.* § 4B1.5 cmt. n.2 (listing Streb's offenses as "covered sex crimes"). More than enough to form a pattern.

B.

Streb does not fare any better with the challenge to his criminal-history score. There are two main considerations: the number of "prior sentence[s] of imprisonment" that a defendant has served and the length of each one. U.S.S.G. § 4A1.1. In limited situations, multiple sentences can be treated as one, but only if they "resulted from offenses contained in the same charging instrument" or "were imposed on the same day." *Id.* § 4A1.2(a)(2).

Streb seeks to avail himself of one of these exceptions for two "prior sentences" he served for passing bad checks. *Id.* § 4A1.1. The problem is that the criminal acts were committed in different counties, meaning that they were not prosecuted under "the same charging instrument," *id.* § 4A1.2(a)(2), and the sentences were not "imposed on the same day," *id.* Under these circumstances, his criminal-history score stands.

## C.

Finally, we conclude that Streb's 268-month sentence, a substantial downward variance from the recommendation of life imprisonment, is substantively reasonable. *See United States v. McKanry*, 628 F.3d 1010, 1022 (8th Cir. 2011) ("[I]t is nearly inconceivable" that once a district court has varied downward, it "abuse[s] its discretion in not varying downward [even] further." (quotation marks omitted)); *see also* U.S.S.G. Part A (setting a range of life for someone with an offense level of 43). The record establishes that the district court sufficiently considered the statutory sentencing factors, 18 U.S.C. § 3553(a), and did not rely on an improper factor or commit a clear error of judgment. *See United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

## VI.

We accordingly affirm the judgment of the district court.

_____