# United States Court of Appeals

## For the Eighth Circuit

_____

No. 25-1269

_____

United States of America

*Plaintiff - Appellee*

v.

Oscar Navarro-Zepeda

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Western

_____

Submitted: November 18, 2025
Filed: March 19, 2026
[Unpublished]

_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.

_____

PER CURIAM.

After backing out of a plea deal, Oscar Navarro-Zepeda received a 204-month sentence for dealing drugs and illegally possessing firearms. Although he argues his plea negotiations were inadmissible, the other evidence is insufficient, and his sentence is too long, we affirm.

I.

Police officers found 33 pounds of methamphetamine, $17,932 in cash, and an unloaded AR-style .223 caliber rifle in Navarro-Zepeda's apartment. They had little doubt that he was a drug dealer because he had already sold a gun and drugs to a confidential informant.

Given the mounting evidence against him, Navarro-Zepeda wanted to avoid a trial. After some back-and-forth, the government sent a plea agreement to defense counsel that gave Navarro-Zepeda the option to plead guilty to two offenses, one for the rifle and another for the drugs. *See* 18 U.S.C. § 924(c)(1) (possession of a firearm in furtherance of a drug-trafficking crime); *Id.* § 2, 21 U.S.C. § 841(a)(1), (b)(1)(A) (possession of methamphetamine with intent to distribute it). It also included several factual stipulations.

Rather than risk the possibility that the government would withdraw the offer, defense counsel had Navarro-Zepeda sign the last page, the one with the signature line, right away. Defense counsel then called him a week later to translate the plea agreement into Spanish and explain what it meant. It took several more weeks for Navarro-Zepeda to finally complete the rest by initialing the individual paragraphs, which included the factual stipulations underlying both crimes and a waiver stating that the government could "use[]" the stipulations "against" him if he "violate[d] or refuse[d] to follow through on this plea agreement."

Despite this lengthy process, the deal fell apart when, during the change-of-plea hearing, Navarro-Zepeda contradicted the factual stipulations. Instead of admitting his illegal activity, he claimed the rifle belonged to someone else and that he planned to throw away the drugs. Without an adequate factual basis to support the plea, the district court[1] rejected it.

---

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa.

A debate then arose over what to do with the stipulations. After hearing testimony, the district court decided that, by failing to follow through with the plea deal, Navarro-Zepeda had knowingly and voluntarily waived the right to exclude them. Based on the stipulations and other evidence, the jury found him guilty.

II.

The general rule is that statements made during plea negotiations, including stipulations in a plea agreement, are inadmissible at trial. *See* Fed. R. Evid. 410; Fed. R. Crim. P. 11(f); *see also United States v. Quiroga*, 554 F.3d 1150, 1154–55 (8th Cir. 2009) (applying Rule 410 to stipulations in a plea agreement). Here, however, Navarro-Zepeda waived the application of Rule 410 by allowing them to "be used against" him if he "refuse[d] to follow through." A waiver like this one is enforceable absent an "affirmative indication that the agreement was entered into unknowingly or involuntarily." *United States v. Young*, 223 F.3d 905, 909 (8th Cir. 2000) (quoting *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995)); *see United States v. Washburn*, 728 F.3d 775, 781 (8th Cir. 2013).

Based on the testimony it heard, the district court decided that it was binding on Navarro-Zepeda. Critical to its decision was defense counsel's recollection that he had specifically explained that the government could use the admissions in the plea agreement against him if he backed out. To the extent Navarro-Zepeda claimed otherwise, the court found that he lacked credibility based on several inconsistencies in his testimony. On clear-error review, we have no reason to second-guess this finding, which forecloses his argument that he had no knowledge of the waiver. *See United States v. Santana*, 150 F.3d 860, 864 (8th Cir. 1998) ("[A] district court's findings regarding the credibility of witnesses are virtually unreviewable on appeal." (citation omitted)).

## III.

The record also forecloses the argument that there was insufficient evidence linking his drug dealing to the rifle found in his apartment.  Key to proving the nexus was the "close proximity" between the rifle and the drugs, which suggested they needed protecting.  *United States v. White*, 962 F.3d 1052, 1056 (8th Cir. 2020) (citation omitted).  Indeed, the government presented expert testimony that drug dealers like Navarro-Zepeda commonly use rifles like the one in his apartment for protection.  *See id.*  "[V]iewing the evidence in the light most favorable to the . . .verdict," there was enough to find him guilty beyond a reasonable doubt. *United States v. Streb*, 36 F.4th 782, 790 (8th Cir. 2022) (citation omitted).

## IV.

Finally, Navarro-Zepeda's sentence is substantively reasonable.  His difficult upbringing and clean criminal history played a role in getting a 91-month downward variance, but the large quantity of drugs and the presence of the rifle convinced the district court not to go any lower.  In reaching this conclusion, the record shows that it sufficiently considered the statutory sentencing factors, *see* 18 U.S.C. § 3553(a), and did not rely on an improper factor or commit a clear error of judgment.  *See United States v. Clark*, 998 F.3d 363, 369 (8th Cir. 2021); *see also United States v. McKanry*, 628 F.3d 1010, 1022 (8th Cir. 2011) (explaining that "it is nearly inconceivable" that a refusal to vary downward further would be reversed (citation omitted)).

## V.

We accordingly affirm the judgment of the district court.

_____