# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2229
_____

United States of America,        *
        *
       Appellee,        *
        *
   v.        *
        *
Colin Spotted Elk,        *
        *
       Appellant.        *

_____

No. 09-2230
_____

        Appeals from the United States
        District Court for the
        District of South Dakota.

United States of America,        *
        *
       Appellee,        *
        *
   v.        *
        *
Flint Thomas Red Feather,        *
        *
       Appellant.        *

_____

Submitted: March 9, 2010
Filed: February 16, 2011

_____

Before RILEY,[*] Chief Judge, JOHN R. GIBSON,[**] and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Colin Spotted Elk and Flint Thomas Red Feather were members of a drug trafficking conspiracy on the Pine Ridge Oglala Sioux reservation in South Dakota. After they appealed their sentences, we reversed in part and remanded for resentencing. United States v. Spotted Elk, 548 F.3d 641 (8th Cir. 2008). They now appeal their new sentences. We affirm.

I.

Spotted Elk and Red Feather were members of a drug trafficking network led by Geraldine Blue Bird. Blue Bird's network sold marijuana and cocaine on the Pine Ridge reservation starting in or before 2003. Spotted Elk exchanged cocaine for firearms. Red Feather sold cocaine, handling approximately fourteen ounces per month. Red Feather stopped selling by February 2005, when he left Pine Ridge and moved in with his girlfriend and child in nearby Oglala. Around that time Blue Bird's network increased its volume of sales, trafficking a kilogram of cocaine every three to four weeks until a series of arrests destroyed the network in late 2005.

The government charged sixteen people with drug trafficking and firearms offenses. A jury found all defendants guilty of all charges. Five defendants, including Spotted Elk and Red Feather, appealed their convictions and sentences on

_____

[*] The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

[**] The Honorable John R. Gibson retired from service on this court on January 26, 2011. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

various grounds. We affirmed in part as to Spotted Elk and Red Feather but reversed and remanded their cases for resentencing. Id.

In his first appeal Spotted Elk challenged the sufficiency of the evidence supporting his conviction for using a firearm in a drug trafficking crime. 18 U.S.C. § 924(c)(1). The district court jury instruction had permitted the jury to find Spotted Elk guilty of violating § 924(c)(1) for receiving a firearm in exchange for drugs. While his appeal was pending, the Supreme Court ruled that § 924(c) does not apply in such circumstances. Watson v. United States, 552 U.S. 74, 83 (2007). The government confessed reversible plain error, and we vacated Spotted Elk's firearm conviction and remanded for resentencing on the remaining counts. Spotted Elk, 548 F.3d at 665. On remand the district court applied the dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1), which Spotted Elk now challenges as procedural error.

Red Feather meanwhile challenged the district court's determination of his relevant conduct under U.S.S.G. § 1B1.3, holding him responsible for over sixteen kilograms of cocaine, the entire amount handled by the conspiracy. Red Feather argued that he had ceased participating in the conspiracy by early 2005 and could not be punished for drug sales beyond that time. The district court decided that Red Feather was liable for the entire amount unless he had withdrawn from the conspiracy "in the particular manner required by conspiracy law." Spotted Elk, 548 F.3d at 673. On his appeal we concluded that the district court had erred by conflating relevant conduct with criminal liability in a drug conspiracy. Id. We vacated Red Feather's sentence and instructed the district court to make the relevant findings under U.S.S.G. § 1B1.3. Id. at 680.

At resentencing the district court found that "kilo sales had not yet started" by early 2005 when Red Feather says he left the conspiracy. He admitted that he was responsible for trafficking 3 kilograms and 14 ounces of cocaine before that time, but

the government argued that the court was bound by the jury's finding that the conspiracy involved over fifteen kilograms.

After a recess to allow briefing, the district court concluded that it was bound by the jury's cocaine quantity determination. It also found independently that it was foreseeable that Red Feather's monthly fourteen ounce sales would continue regardless of his absence from the reservation in 2005. That amount added to the quantity for which he admitted responsibility led to the court's finding him responsible for between 5 and 15 kilograms of cocaine. The district judge sentenced him to 151 months at the low end of the guideline range, a substantial reduction from his original 200 month sentence. Red Feather now argues that the district court committed procedural error in his resentencing.

## II.

We review sentences under a deferential abuse of discretion standard, reviewing the district court's factual findings for clear error and its application of the guidelines de novo. United States v. Moore, 565 F.3d 435, 436 (8th Cir. 2009). A district court commits procedural error by "failing to calculate (or improperly calculating) the Guidelines range," "selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall v. United States, 552 U.S. 38, 51 (2007).

### A. Spotted Elk

The sentencing guidelines provide for a two level enhancement if a defendant possessed a dangerous weapon while involved in drug trafficking, U.S.S.G. § 2D1.1(b)(1), but that enhancement cannot be used if the defendant was convicted of using a weapon in his drug trafficking offense. See § 924(c)(1); U.S.S.G. § 2K2.4 cmt. n.4. Since Spotted Elk's § 924 conviction was vacated and his case was

remanded for "resentenc[ing] on the remaining counts," <u>Spotted Elk</u>, 548 F.3d at 665, Spotted Elk argues that the district court lacked authority to apply the dangerous weapon enhancement on remand or otherwise alter his sentence. We rejected such an argument in <u>Gardiner v. United States</u>, 114 F.3d 734 (8th Cir. 1997), where we concluded that the district court could apply the guideline enhancement to a drug trafficking sentence after a § 924 conviction had been vacated. In these circumstances, "vacating the § 924(c) convictions without allowing for resentencing on the drug convictions would result in [sentences] based on an erroneous application of the Sentencing Guidelines." <u>Id.</u> at 736.

In Spotted Elk's first appeal we clearly directed the district court to consider the effect of the vacatur on Spotted Elk's sentence and to resentence him on the remaining counts. 548 F.3d at 668. Spotted Elk argues that the government did not request the weapon enhancement in its letter confessing plain error. Since he had not appealed his original drug sentence, the government was not obliged to counter arguments not raised. The district court did not err in applying the weapon enhancement in resentencing under § 2D1.1(b)(1).

On remand the district court varied eight months below the 360 month bottom of Spotted Elk's new guideline range, imposing the same 352 month sentence it stated it would have imposed without the weapon enhancement. If "the sentence imposed falls within the [requested] guideline range . . . and if it is clear that the sentencing court would have imposed the same sentence regardless . . . , there can be no reversible error in the sentence." <u>United States v. Spikes</u>, 543 F.3d 1021, 1025 (8th Cir. 2008). Spotted Elk's sentence should be affirmed.

## B. Red Feather

On remand the district court found that Red Feather's offense involved between 5 and 15 kilograms of cocaine and calculated his guideline range accordingly. It gave

two reasons for its finding. The court first stated that it was "bound by the jury determination" that the conspiracy involved over sixteen kilograms of cocaine. The district court observed that it is "axiomatic that a fact proved beyond a reasonable doubt" has been proved to the preponderance standard applicable at sentencing, see United States v. Campos, 362 F.3d 1013, 1015–16 (8th Cir. 2004), but only if the jury addressed the same issue as the district court. That is not the situation here, however.

The jury was instructed to "determine the total quantity of [cocaine] involved in the conspiracy," including that which coconspirators foreseeably distributed as "a necessary or natural consequence of the conspiracy." That figure was relevant to Red Feather's statutory minimum sentence, but § 1B1.3 refers to the narrower concept of the joint activity in which the individual defendant participated. The scope of such activity "is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." U.S.S.G. § 1B1.3, cmt. n.2. We earlier remanded for resentencing precisely because the district court had not made this distinction in its factual findings. Spotted Elk, 548 F.3d at 679. The district court erred in holding that the jury's quantity finding controlled its analysis.

Our review does not end here, however, because the district court gave a second reason for its conclusion. It observed that Red Feather had admitted trafficking over three kilograms of cocaine before leaving Pine Ridge in early 2005. At that point he had been handling around fourteen ounces of cocaine per month. Had he continued selling at that rate, Red Feather would have handled a total of five kilograms of cocaine within about four more months. Red Feather's coconspirators in fact continued trafficking for at least nine months after he stopped. The district court did not clearly err in finding that this amount of continued sales would have been "reasonably foreseeable in connection with [the] criminal activity" that this "particular defendant agreed to jointly undertake." U.S.S.G. § 1B1.3, cmt. n.2.

Red Feather insists that the district court made a contrary factual finding during the first session of his bifurcated resentencing proceeding. The district court was inclined initially only to "hold [Red Feather] responsible for the activity that occurred prior to early 2005" on the theory that "the kilo sales that occurred in 2005 . . . were not reasonably foreseeable" to him. The district court later clarified its position by finding that Red Feather could have foreseen ongoing sales "at the multiple ounce quantities, [but] not at the kilo quantity." These findings are therefore entirely consistent with the district court's alternative holding that Red Feather's relevant conduct included monthly fourteen ounce sales after he himself was no longer making the transactions.

Finally, Red Feather asserts that he withdrew from the conspiracy when he stopped selling in early 2005 and that analysis of his relevant conduct should end there. As we explained before, "the common-law withdrawal test [has not] replaced the foreseeability requirement of § 1B1.3." Spotted Elk, 548 F.3d at 678. Although at resentencing the district court did use the term "withdrawal," it is clear in context that it referred only to the end point of Red Feather's own sales.

For the foregoing reasons the judgment of the district court is affirmed.

_____