# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-3380
_____

United States of America

*Plaintiff - Appellee*

v.

Edgar A. Mejia

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: November 20, 2025
Filed: April 7, 2026
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Officers found heroin and guns in a secret compartment in Edgar Mejia's trailer. He claims the government did not prove he was part of a drug-dealing conspiracy and that two errors call his sentence into question. We affirm the conviction, reject one sentencing challenge, and dismiss the other.

I.

Mejia's legal troubles began when officers discovered six grams of heroin and 453 grams of methamphetamine in his car outside a casino. When he mentioned that he also had a trailer, they decided to have it searched too. It had a hidden compartment in the kitchen wall with two firearms and 541 grams of heroin.

Mejia tried to have his alleged co-conspirator, Gregory Johnson, remove the drugs and guns, but he did not get there in time. Among the topics discussed during a series of jailhouse calls were how to open the hidden compartment, the "dog food" supposedly inside, and his desire for Johnson to remove it before "the roaches" and "rodents" arrived. In another call, he said, "I got the toys in the wall, man. And . . . the dog food I bought for Sprinkles is gonna go bad." He emphasized that "there [wa]s a lot of money right there."

Johnson reported back to a disappointed Mejia in another call. He admitted that, according to neighbors, the police had taken "the toys and shit" and that his bond was "probably about to go up." Unsatisfied, Mejia asked him to go back to the trailer to see whether officers had actually opened the hidden compartment. Johnson later confirmed they had, and it was empty.

Mejia faced four federal charges. He pleaded guilty to two of them. *See* 21 U.S.C. § 841(a)(1), (b)(1)(B) (possession with intent to distribute heroin); 18 U.S.C. §§ 922(g)(1), 924(a)(8) (illegal possession of a firearm as a felon). The jury found him guilty of the other two, one for conspiring to distribute heroin, *see* 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846; and the other for possessing a firearm in furtherance of drug trafficking, *see* 18 U.S.C. § 924(c)(1)(A)(i).

At sentencing, three of his 11 criminal-history points came from a marijuana conviction that a state court had expunged under a Missouri constitutional amendment. *See* Mo. Const. art. XIV, § 2.10(8)(a) (expunging "criminal[-]history records" for some who have finished serving felony marijuana sentences). Based on

several considerations, including his criminal history and the overwhelming evidence of guilt, the district court[1] gave him a sentence of 322 months in prison. It also included 60 months of supervised release, during which he either had to "work full time" or, in his probation officer's discretion, "perform up to 20 hours of community service per week."

## II.

Of his four convictions, Mejia challenges the sufficiency of the evidence on just one: the conspiracy to distribute heroin. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846. For that charge, the government had to prove Mejia and at least one other person had "an agreement to distribute [heroin]" and that he knew about it and "intentionally joined." *United States v. De La Cruz Nava*, 80 F.4th 883, 888 (8th Cir. 2023). The standard of review for a sufficiency challenge is de novo, viewing the evidence "in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict." *United States v. Streb*, 36 F.4th 782, 790 (8th Cir. 2022).

The jailhouse calls between Mejia and Johnson established they were co-conspirators. They formed the agreement, at the latest, when Johnson promised to retrieve the "dog food" from the hidden compartment in the trailer. *See United States v. Escobar*, 909 F.3d 228, 234 (8th Cir. 2018) (describing a conspiracy in which co-conspirators would "pick up" drugs from each other). Mejia even told him the reason: the heroin was worth "a lot of money." From there, the jury could reasonably infer that the plan was for Johnson to either sell the drugs himself or hold onto them until Mejia could do so. *See United States v. Bailey*, 54 F.4th 1037, 1040 (8th Cir. 2022) ("The conspiracy may be proven through circumstantial evidence and by inferences based on the actions of the parties."). And the fact that Mejia appeared to be in charge showed that he knew about the conspiracy and intentionally joined

---

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

it.  *See United States v. Madrigal*, 136 F.4th 766, 774 (8th Cir. 2025) (explaining there was enough evidence of a conspiracy when the defendant "led it").

It makes no difference that Johnson never recovered the heroin.  He may not have seen or touched it, but the crime was complete once he agreed to visit the trailer, open the hidden compartment, and remove what was inside.  *See United States v. Norton*, 846 F.2d 521, 525 (8th Cir. 1988) (concluding that a defendant joined a conspiracy even though his "involvement concerned only his efforts to . . . recover the cocaine"); *see also United States v. Gehl*, 128 F.4th 1001, 1006 (8th Cir. 2025) (explaining that it is unlikely that a drug dealer would provide "an innocent person with the potential to furnish evidence against him" (quoting *Maryland v. Pringle*, 540 U.S. 366, 373 (2003))).  A foiled conspiracy is still a conspiracy.  *See United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) (explaining that the "agreement is a distinct evil, which may exist and be punished whether or not the substantive crime ensues" (citation omitted)).

Not to mention that the government presented evidence that Mejia conspired with an unknown supplier too.  *See United States v. Pinto*, 106 F.4th 750, 756 (8th Cir. 2024) (explaining that "members of a conspiracy do not have to know one another, nor do they need to be aware of all the activities of other participants in the conspiracy").  He had more than a personal-use amount of heroin and limited equipment for making it, which suggests that someone else must have provided it.  *See United States v. Mendoza-Gonzalez*, 363 F.3d 788, 796 (8th Cir. 2004) (upholding a conspiracy conviction in part because it was implausible that the defendant "grew, processed, packaged, and loaded such large amounts of marijuana [himself] . . . without assistance from any other person").  On these facts, it would have been reasonable for the jury to infer "that a conspiracy existed between [Mejia] and at least one unidentified [supplier]."  *United States v. Sanchez-Garcia*, 461 F.3d 939, 946 (8th Cir. 2006); *see Mendoza-Gonzalez*, 363 F.3d at 796.

III.

The remaining two challenges are to Mejia's sentence. One focuses on the criminal-history calculation and the other on a condition of supervised release that will eventually require him get a job or perform community service. The former changes nothing, and the latter is not yet ripe.

A.

Under the Sentencing Guidelines, the treatment of expunged convictions can be complicated. *See* U.S.S.G. § 4A1.2(j). When an expungement is the result of "constitutional invalidity, innocence, or a mistake of law," the conviction does not count in a defendant's criminal-history score. *United States v. Lincoln*, 408 F.3d 522, 525 (8th Cir. 2005) (citation omitted). In other circumstances, it does. *See id.*

Mejia received three points for a marijuana conviction, even though it had been expunged under a Missouri constitutional amendment. *See* Mo. Const. art. XIV, § 2.10(8)(a). The decision to count it, however, ultimately did not matter because the district court also justified the 322-month sentence under the statutory sentencing factors. Any error became harmless the moment the district court made clear that the sentence would be the same, with or without the expunged conviction.[2] *See* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *see also United States v. Kemp*, 908 F.3d 1138, 1140–41 (8th Cir. 2018) (upholding a sentence because "any error in calculating the applicable Guidelines range was harmless").

---

[2]We recently held that a conviction expunged for the same reason counted under a different Sentencing Guidelines provision. *See United States v. Lozano*, ___ F.4th ___, 2026 WL 850182, at *6 (8th Cir. Mar. 27, 2026) (dealing with the career-offender provision). Given that Mejia's expunged conviction made no difference either way, there is no reason to have the parties address *Lozano*.

The first step was explaining why a longer sentence was "sufficient, but not greater than necessary," to serve "the purposes" of the federal sentencing statute. 18 U.S.C. § 3553(a). Among the reasons were Mejia's "history and characteristics," *id.* § 3553(a)(1), consisting of "frequen[t]" crimes, including two federal cases ending in the revocation of supervised release. The violations reflected an "inability to demean [him]self to supervision." The district court then turned its attention to "the nature and circumstances of [his most recent] offense[s]." *Id.* They were, in the court's words, "serious" and "dangerous," with little doubt that he had committed them.

The next step was to explain why the statutory analysis mattered. If it was wrong about the expunged conviction, it wanted to clarify that the "analysis under 18 U.S.C. § 3553(a)[] would" still lead to the same sentence. *See, e.g.*, *United States v. Simms*, 695 F.3d 863, 866 (8th Cir. 2012) (concluding that any error in calculating a defendant's criminal-history score was harmless when the district court explained the sentence would be the same either way); *United States v. Sanchez-Martinez*, 633 F.3d 658, 660–61 (8th Cir. 2011) (same). It then left no doubt by declaring that, "[e]ven if [Mejia's] attorney would have won all of her objections[,] . . . [it would] still come out the same." The point was to make clear that he would receive a 322-month sentence no matter what.

Mejia claims that the district court forgot a step: calculating an alternative range. It is true that, before *Gall v. United States*, 552 U.S. 38 (2007), we stated that the calculation of an error-free range was necessary for substantive-reasonableness review. *See United States v. Bah*, 439 F.3d 423, 431 (8th Cir. 2006). And though the addendum to the presentence investigation report included one, there is no dispute that the court never mentioned it.

*Gall* changed the sentencing landscape. It rejected a strict "mathematical approach" in favor of one requiring an "individualized assessment based on the facts presented." *Gall*, 552 U.S. at 47, 50. What matters, in other words, is whether the

district court "adequately explain[ed] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 50.

It is no surprise that our approach to harmless-error review has changed too. After *Gall*, we shifted from mechanically requiring alternative ranges for every alleged error to evaluating whether the "reasoning" allowed for "meaningful appellate review." *United States v. McGrew*, 846 F.3d 277, 282 (8th Cir. 2017) (quoting *Gall*, 552 U.S. at 50); *see United States v. Vickers*, 528 F.3d 1116, 1121 (8th Cir. 2008) (explaining that post-*Gall* analysis is "fact-intensive" and depends on whether the district court's "resolution of the issue affected its ultimate determination of a reasonable sentence"); *see also United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017) (adopting a similar analysis based on *Gall*). None of these cases, nor others like them, mentioned the need for an alternative range.[3] *See, e.g.*, *Simms*, 695 F.3d at 866; *United States v. Holmes*, 87 F.4th 910, 914 (8th Cir. 2023); *United States v. Neri*, 73 F.4th 984, 988 (8th Cir. 2023). We decline to turn back the clock.

## B.

Less is known about why the district court decided that Mejia would need "to perform up to 20 hours of community service per week until [he is] employed." But it may not matter, at least not yet. The condition, after all, only kicks in once he starts supervised release, which will require him to serve more than 25 years in prison first. Even if he has a point about whether the Sentencing Guidelines allow an open-ended community-service condition like this one, *see* U.S.S.G. § 5F1.3,

---

[3]Even our pre-*Gall* cases did not uniformly require one. In *United States v. Harris*, we determined that, "[i]f the sentence imposed falls within the guideline range urged by the appellant" and it is "*clear* that the sentencing court would have imposed the same sentence regardless . . . , there can be no reversible error." 390 F.3d 572, 573 (8th Cir. 2004) (emphasis added); *see United States v. Elk*, 632 F.3d 455, 458 (8th Cir. 2011) (replicating *Harris*'s approach). The 322-month sentence in this case checks the relevant boxes from *Harris*.

cmt. n.1 ("Community service generally should not be imposed in excess of 400 hours."), we cannot address its legality until it is "ripe for adjudication," *KCCP Tr. v. City of North Kansas City*, 432 F.3d 897, 899 (8th Cir. 2005).

Dealing with it any earlier deprives us of a "Case[] or Controvers[y]," U.S. Const. art. III, § 2, because the condition "may not occur as anticipated[] or . . . [even] occur at all," *Parrish v. Dayton*, 761 F.3d 873, 875–76 (8th Cir. 2014) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). It rests upon "contingent future events," like whether his probation officer will decide that community service makes sense for Mejia, given that he will be over 70 by the time he leaves prison. *Id.* at 876 (quoting *Texas*, 523 U.S. at 300). Or perhaps he will find a job the moment he gets out, which would leave the community-service contingency untriggered. There are countless possibilities. But one thing is for sure: we cannot decide questions that "may never arise." *Paschall v. Kan. City Star Co.*, 605 F.2d 403, 407 (8th Cir. 1979) (citation omitted).

The condition also does not threaten imminent harm like the one in *United States v. Hinkeldey*, 124 F.4th 1093, 1094 (8th Cir. 2024) (per curiam). There, the defendant was on supervised release, which meant that the potential harm from a similar community-service condition was already hanging over his head. *See id.*; *see also United States v. Wroblewski*, 816 F.3d 1021, 1023 (8th Cir. 2016) (explaining that a probation officer can enforce the conditions of supervised release). Here, by contrast, any injury is speculative and decades away.[4] *See United States v. Thomas*, 198 F.3d 1063, 1065 (8th Cir. 1999) (determining that a challenge to a condition prohibiting a defendant from associating with a gang was unripe because

---

[4]On occasion, we have considered challenges to the conditions of supervised release on direct appeal, even when defendants still have years left on their sentence. *See, e.g.*, *United States v. Stults*, 575 F.3d 834, 850 (8th Cir. 2009); *United States v. Kerr*, 472 F.3d 517, 520–24 (8th Cir. 2006). But in those cases, unlike this one, the "potential jurisdictional defect [was] neither noted nor discussed, [so] the decision does not stand for the proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011).

his release was a decade away); *see also Pub. Water Supply Dist. No. 10 v. City of Peculiar*, 345 F.3d 570, 573 (8th Cir. 2003) (explaining that a "case is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities").

The wait, however, may not last forever. Once the community-service condition imposes *some* hardship on him, he is free to try again. *See United States v. Williams*, 30 F.4th 796, 801–02 (8th Cir. 2022) (stating that "speculative harms do not justify reversal of special conditions when the defendant can seek modification of the condition" after release); *see also Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000) (explaining that hardship includes the "heightened uncertainty and resulting behavior modification that may result from delayed resolution"). Until then, we dismiss without prejudice. *See Parrish*, 761 F.3d at 875.

## IV.

Except for dismissing the challenge to the community-service condition without prejudice, we affirm the judgment of the district court.

———————————————